**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANDREW FISCINA and KYLE DUARTE, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation, d/b/a AUDI OF AMERICA, INC., VOLKSWAGEN AG, a German Corporation, and AUDI AG, a German Corporation,<br><br>Defendants. | Civ. No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Andrew Fiscina and Kyle Duarte (collectively, "Plaintiffs") individually and on behalf of all others similarly situated, bring this Complaint against Volkswagen Group of America, Inc. ("VWGoA"), Audi of America, Inc. ("Audi of America"), Volkswagen AG ("VWAG"), and Audi AG (collectively, "VW" or "Defendants"). Plaintiffs allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief:

**INTRODUCTION**

1.      This consumer class action arises from a latent defect found in the model year ("MY") 2013-2022 Audi S4, Q5, S5, SQ5, A6, A7, Q7, and A8 equipped with 3.0T engines (hereafter, the "Class Vehicles").[1]

---

[1] Plaintiffs reserve the right to amend the definition of the Class Vehicles after conducting discovery.

2.     This action arises from Defendants' failure, despite its longstanding knowledge since at least November 2, 2018, to disclose to Plaintiffs and other consumers that the Class Vehicles contain a defectively designed and/or manufactured water pump ("Water Pump") that causes it to prematurely fail ("Water Pump Defect" or "Defect"). When the Defect manifests, it may cause the engines in the Class Vehicles to overheat, resulting in sudden and catastrophic engine failure.

3.     The sudden and unexpected catastrophic engine failure causes the Class Vehicles to unexpectedly stop, posing a danger to the drivers and occupants of the Class Vehicles, and others who share the road with them, as other vehicles can collide with the Class Vehicles after they suddenly stop moving.

4.     Not only did Defendants actively conceal the fact that the Class Vehicles were prone to the Defect, which could result in sudden and unexpected slowing and stopping events and other dangerous situations (and require costly repairs to fix), but they also did not reveal that the existence of this Defect would diminish the intrinsic and resale value of the Class Vehicles.

5.     Defendants have long been aware of the Defect. Despite their longstanding knowledge, Defendants have been unable or unwilling to adequately repair the Class Vehicles when the Defect manifests.

6.     Many owners and lessees of the Class Vehicles have communicated with Defendants and their agents to request that they remedy and/or address the Defect at Defendants' expense. Defendants have failed and/or refused to do so, often conveying to owners and lessees that the Class Vehicles are operating as intended and therefore cannot be repaired under warranty or otherwise. Once the Class Vehicles fall outside the warranty period, Defendants then charge the owners and lessees for the costly repairs necessitated by the Defect.

7.     Defendants have also refused to take any action to correct this concealed defect when it manifests in the Class Vehicles outside of the warranty period. Because the defect can manifest shortly outside of the warranty period for the Class Vehicles—and given Defendants' knowledge of this concealed, safety-related defect—Defendants' attempt to limit the warranty with respect to the engine defect is unconscionable and unenforceable here.

8.     As a result of Defendants' unfair, deceptive, and/or fraudulent business practices, owners and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Defendants were conducted in a manner giving rise to substantial aggravating circumstances.

9.     Despite notice and knowledge of the defect from the numerous complaints they have received, information received from dealers, National Highway Traffic Safety Administration ("NHTSA") complaints, and their own internal records, including pre-sale durability testing, Defendants have not recalled and/or offered an adequate repair to the Class Vehicles, offered their customers suitable repairs or replacements free of charge, or offered to reimburse their customers who have incurred out-of-pocket expenses to repair the Defect.

10.     Had Plaintiffs and other Class Members known of the Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles, or would have paid substantially less for them.

11.     Plaintiffs are also informed and believe, and on that basis allege, that as the number of complaints increased, and Class Members grew dissatisfied with the performance of the Class Vehicles, Defendants were forced to acknowledge that the Class Vehicles suffer from an inherent defect.

12.     As a result of the Defect and the monetary costs associated with attempting to repair the Defect, Plaintiffs and the Class Members have suffered injury in fact, incurred damages, and have otherwise been harmed by Defendants' conduct.

13.     This case seeks protection and relief for owners and lessees of the Class Vehicles for the harm they have suffered, and the safety risks they face, from Defendants' breaches of express and implied warranties and Defendants' unfair, unlawful, and deceptive trade practices.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district. Additionally, a substantial part of the events or omissions giving rise to the claim occurred in this district, Defendants have advertised in this district, and Defendants have received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this district.

16.     This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the state of New Jersey and throughout the United States.

## **THE PARTIES**

**Plaintiff Andrew Fiscina**

17.    Plaintiff Andrew Fiscina is a citizen of California who currently resides in Walnut Creek, California, and has at all times pertinent to this Complaint.

18.    Plaintiff purchased a certified pre-owned 2016 Audi SQ5 on or about December of 2020, from Audi of Concord, an authorized Audi dealership located in Concord, California.

19.    Plaintiff purchased (and still owns) this vehicle, which is used for personal, and/or household use. His vehicle bears Vehicle Identification Number: WA1CCAFP9GA060646.

20.    Prior to purchase, Plaintiff discussed the features of the vehicle with Volkswagen's sales representatives at Audi of Concord and reviewed the vehicle's window sticker. None of these sources disclosed the Defect to Plaintiff.

21.    In or about October of 2021, when Plaintiff's vehicle had approximately 45,000 miles on the odometer, Plaintiff observed that engine coolant was leaking from his engine compartment.

22.    Plaintiff initially contacted Audi of Concord and requested the dealership cover the necessary repairs under warranty. The dealership declined, and informed Plaintiff he would be charged for any repairs.

23.    Plaintiff brought his vehicle to a third party repair facility, 034 Motorsport, located in Fremont, California, and paid $825.78 out of pocket for the parts and labor required to repair the Defect.

24.    Plaintiff has suffered an ascertainable loss as a result of Defendants' omissions associated with the Defect, including, but not limited to, out of pocket loss associated with the Defect and diminished value of his vehicle.

25.    Neither Defendants, nor any of their agents, dealers, or other representatives

informed Plaintiff of the existence of the Water Pump Defect prior to purchase. Had Defendants disclosed the Defect to Plaintiff, Plaintiff would not have purchased his vehicle, or would have paid less for it.

**Plaintiff Kyle Duarte**

26.    Plaintiff Kyle Duarte is a citizen of Massachusetts who currently resides in Rockland, Massachusetts, and has at all times pertinent to this Complaint.

27.    Plaintiff Duarte purchased a used 2018 Audi S4 on 2019, from Porsche Norwell located in Norwell, Massachusetts, which is owned by Village Automotive Group, a company that owns multiple authorized dealerships including an authorized Audi dealership, Audi Norwell located in Norwell, Massachusetts.

28.    Plaintiff Duarte purchased (and still owns) this vehicle, which is used for personal, and/or household use. His vehicle bears Vehicle Identification Number: WAUB4AF48JA001810.

29.    Plaintiff Duarte is a mechanic and thus—prior to purchasing the vehicle—possessed general knowledge of the Audi S4 model based on information made publicly available by Audi about the vehicle. Prior to purchase, Plaintiff discussed the features of the vehicle with Porsche Norwell's sales representatives at Porsche Norwell. None of these sources disclosed the Defect to Plaintiff Duarte.

30.    On or about November 24, 2020, while his vehicle was still within the vehicle's 4-year/50,000-mile New Vehicle Limited Warranty, the thermometer engine light came on, so Plaintiff Duarte took the vehicle to Audi Norwell to have it serviced.

31.    Audi Norwell's service department inspected the vehicle and ran a diagnostic on the engine light, and informed Plaintiff Duarte that the light came on because Audi S4 models burn through coolant and his coolant level was low. As such, Audi Norwell added coolant to his vehicle,

turned the engine light off, and returned the vehicle to Plaintiff Duarte.

32.     In or about January 2022, the engine light came back on in Plaintiff Duarte's vehicle, so he took it to Audi Norwell once again, while the vehicle had approximately 60,000 miles. The Audi Norwell service department told Plaintiff Duarte the same thing as it did the prior visit: that his car is abnormally prone to burning coolant and his coolant levels dropped low enough to prompt the engine light. Once again, Audi Norwell added coolant to his vehicle, turned the engine light off, and returned the vehicle to Plaintiff Duarte.

33.     On or about June 5, 2022, Plaintiff Duarte's vehicle overheated and the same engine light came on. Being a mechanic, he inspected the cause of the issue and determined that his vehicle's water pump caused the problem. He bought—and paid out of pocket—for repair parts including a new water pump, thermostat, and thermoexpansion valve, and replaced all three of those parts in his vehicle. Plaintiff Duarte paid $558.91 out of pocket for the parts required to perform these repairs of the Defect.

34.     Plaintiff Duarte has suffered an ascertainable loss as a result of Defendants' omissions associated with the Defect, including, but not limited to, out of pocket loss associated with the Defect and diminished value of his vehicle.

35.     Neither Defendants, nor any of their agents, dealers, or other representatives informed Plaintiff Duarte of the existence of the Water Pump Defect prior to purchase. Had Defendants disclosed the Defect to Plaintiff Duarte, he would not have purchased his vehicle, or would have paid less for it.

**Defendants**

36.     Defendant VWGoA is an entity incorporated in New Jersey with its principal place of business and headquarters at 220 Ferdinand Porsche Drive, Herndon, Virginia 20171. At this

facility, VWGoA coordinates the United States operations and activities of the Volkswagen, Audi, Bentley, Bugatti, and Lamborghini brands, as well as the activities of its 8,000 employees and its subsidiary, VW Credit, Inc. One of VWGoA's fictious names is Audi of America, Inc., a New Jersey corporation which VWGoA has registered with the Virginia Secretary of State.

37.     Defendant VWGoA, through its various entities, markets, distributes, warranties, and sells Audi-branded automobiles and parts for those automobiles, including the Class Vehicles, in multiple locations across the United States, including New Jersey, California, and Massachusetts.

38.     In order to sell vehicles to the general public, VWGoA enters into agreements with authorized dealerships who engage in retail sales with consumers such as Plaintiffs. In return for the exclusive right to sell new Audi-branded vehicles, authorized dealerships are also permitted to service and repair these vehicles under the warranties VWGoA provides directly to consumers who purchased new vehicles from the authorized dealerships. All service and repair at an authorized dealership are completed according to VWGoA, Audi AG, and VWAG instructions, issued through service manuals, technical service bulletins ("TSBs"), technical tips ("TT"), and other documents. Per the agreements between VWGoA and the authorized dealers, consumers such Plaintiffs are able to receive services under VWGoA's issued warranty at dealer locations that are convenient to them. These agreements provide VWGoA with a significant amount of control over the actions of the authorized dealerships, of which there are nearly 1,000 in the United States.

39.     VWGoA, in conjunction with VWAG and Audi AG, drafted the warranties it provides directly to consumers such as Plaintiffs. These warranties are provided on a take-it-or-leave it basis and give VWGoA the sole power in determining whether a repair is coverable by the

warranty. VwGoA designates its authorized dealerships as its agents to perform warranty repairs.

40.     VWGoA also developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles. VWGoA also is responsible for the content of the Monroney Stickers on Audi-branded vehicles.

41.     Defendant Volkswagen AG is an entity incorporated in and registered to do business in Germany with its principal place of business at Berliner Ring 2, 38440, Wolfsburg, Germany. This facility also encompasses a 70 million sq. ft. manufacturing facility, the Wolfsburg Volkswagen Plant, where over 800,000 vehicles are produced each year. The Wolfsburg headquarters also have individual production facilities, specialty production plants, warehouses, and administration buildings, with over 20,000 employees. VWAG designs, engineers, manufactures, tests, markets, supplies, sells and distributes Volkswagen, Skoda, and Audi branded vehicles and parts for those vehicles worldwide, including the in the United States.

42.     VWAG is the parent corporation of VWGoA and Audi AG, which are each wholly owned subsidiaries. VWAG is also the parent corporation of the United States manufacturing facilities for Volkswagen and Audi-branded vehicles. For all its United States subsidiaries, including VWGoA, VWAG and/or Audi AG, VWAG provides all the technical information for the purpose of manufacturing, servicing, and repairing the Class Vehicles. VWAG selected New Jersey for the original site of VWGoA's headquarters and chose to have VWGoA incorporated as a New Jersey entity. Each year since 2016, VWAG has reported over 35 billion euros (or over 41 billion in U.S. dollars) of revenue from its North American activities via VWGoA and its network of authorized dealerships.

43.     Defendant Audi AG is an entity incorporated and registered in Germany with its principal place of business at Auto-Union-Str. 2 D-85045, Ingolstadt, Germany. The Ingolstadt

facility encompasses both corporate offices, which coordinate and supervise its worldwide operations, and a factory totalling over 30 million sq. ft., which produces over 300,000 vehicles a year. As of the end of 2020, over 43,000 employees worked at this facility. Audi AG designs, engineers, manufactures, tests, markets, supplies, sells and distributes Audi branded vehicles and parts for those vehicles worldwide, including in the United States.

44.     The relationship between VWAG and VWGoA is governed by a General Distributor Agreement that gives Audi AG and/or VWAG the right to control nearly every aspect of VWGoA's operations related to Audi branded vehicles—including sales, marketing, management policies, information governance polices, pricing, and warranty terms.

45.     For all VWAG United States subsidiaries, including VWGoA, VWAG and/or Audi AG, VWAG provides all the technical information for the purpose of servicing and repairing the Class Vehicles, as well as the information needed to draft the owners' manuals.

46.     At all relevant times, VW was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and/or selling automobiles and motor vehicle components in New Jersey and throughout the United States of America.

## TOLLING OF STATUTES OF LIMITATION

47.     Any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiffs and members of the Class could not have reasonably discovered the true, latent nature of the Defect until shortly before this class action litigation was commenced.

48.     Defendants were and remain under a continuing duty to disclose to Plaintiffs and members of the Class the true character, quality, and nature of the Class Vehicles, that the Defect is a safety related defect, and that it diminishes the resale value of the Class Vehicles. As a result

of the active concealment by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

### A. The Water Pump in the Class Vehicles

49.     The Class Vehicles utilize a belt driven Water Pump to assist in cooling the engine while the Class Vehicles are in operation. Without a properly functioning water pump system, the engines in the Class Vehicles will overheat, which will eventually result in catastrophic engine failure which poses a substantial safety threat to Class Vehicle owners and their families.

50.     Audi USA's website stresses the importance of a properly functioning water pump to the reliable and safe operation of Class Vehicles:

> If any of the components of your vehicle's water pump assembly are faulty, your engine can't properly cool itself. If you've noticed a coolant leak from the front of your engine, quickly rising engine temperatures at idle or that your water pump pulley is loose or making noise, have your 2014 Audi S5 inspected by one of our certified Audi technicians.[2]

51.     The Water Pump in the Class Vehicles also incorporates a thermostat module. The thermostat monitors the operating temperature of the engine by measuring the temperature of the engine coolant. When the thermostat reads an optimal operating temperature within the engine, it opens and allows engine coolant to flow between the radiator and the engine in order to maintain the optimal operating temperature range. Conversely, when the engine is running below optimal temperature, such as on cold days, the thermostat closes and blocks engine coolant from passing between the radiator and engine in order to allow the engine to build heat and reach optimal operating temperature.

52.     As the engine starts and begins to run, the engine will generate heat. As the heat

---

[2] https://parts.audiusa.com/p/Audi_2014_S5/Engine-Water-Pump-Water-pump-ASSEMBLY/75727542/06E121018K.html (last visited October 4, 2022).

builds in the engine, the thermostat within the cooling system then begins to open. Once the thermostat has opened, the Water Pump starts by taking coolant from the radiator and moving it through the engine block and associated components. As the coolant flows through the engine coolant passages, it absorbs heat from the engine, thereby allowing the engine to operate at its optimal temperature and avoid overheating. The coolant then returns back to the radiator, where it is cooled and then can be cycled through the Class Vehicle's engine again. A diagram depicting generally how a water pump and cooling system functions is included below as background:



B.  **The Water Pump Defect**

53.    The main function of the Water Pump in Class Vehicles is to circulate coolant through the cooling system. The Water Pump in the Class Vehicles is depicted below (shown from

both sides)[3]:



54.    The Water Pump in Class Vehicles is driven by the timing belt, which circulates the coolant throughout the engine by the centrifugal action of a finned impeller on the Water Pump shaft. The diagram below shows a typical timing belt driven water pump like those in the Class Vehicles:



Typical V6 Timing Belt

55.    As the engine runs, the timing belt revolves around the Water Pump pulley, rotating the Water Pump impeller, which is within the cooling system, causing the coolant to circulate. The diagram below shows the components of the Water Pump, including the impeller:

---

[3] https://parts.audiusa.com/p/Audi_2014_S5/Engine-Water-Pump-Water-pump-ASSEMBLY/75727542/06E121018K.html (last visited October 4, 2022).





56.    Although in the past Audi water pumps were considered a commodity product, now in modern times Audi water pumps (such as the Water Pumps in Class Vehicles) are considered a crucial technical component of coolant and engine systems.

57.    In order to achieve the best possible engine performance and efficiency, the water pump needs to produce and maintain precise coolant circulation rates. These rates sustain optimal engine temperature, fuel economy, and emissions.

58.    Although there has been major focus on the water pump impeller, it is the internal bearings and seals that contribute most to the lifespan of Water Pumps in the Class Vehicles. The diagram below shows the components of the Water Pumps including the internal bearings and seals:



59.   Audi designed a weep hole (depicted in the diagram above) in the Water Pump of Class Vehicles to allow coolant to slowly drip out and alert the owner that it was due for replacement.[4]

60.   Upon information and belief, the Water Pump contains a design and/or manufacturing Defect that causes the bearing contained within the Water Pump to fail which, in turn, causes the bearing seals (depicted in the diagram above) within the Water Pump to fail and results in a leak of coolant from the Water Pump weep hole into the engine compartment of Class Vehicles.[5] When the Water Pump bearings and seals fail, continued driving of the Class Vehicles can be catastrophic.[6] The image below shows the inside of the Water Pump bearing:

---

[4] https://blog.fcpeuro.com/how-to-replace-the-water-pump-and-thermostat-b8-audi-s4 (last visited October 4, 2022).
[5] https://blackforestindustries.com/products/audi-vw-3-0t-water-pump (last visited October 4, 2022).
[6] https://www.blauparts.com/blog/audi-water-pump-replacement-information.html#leaking-from-the-audi-water-pump-weep-plug-hole (last visited October 4, 2022).



61.     Upon further information and belief, Class Vehicles also experience coolant leakage from the crossover pipe[7] and/or coolant pipe[8] attached to the Water Pump/thermostat unit, which causes coolant to leak into the engine compartment of Class Vehicles. Below is a picture of the crossover pipe and coolant pipe:



---

[7] https://parts.audiusa.com/p/audi__/Engine-Coolant-Crossover-Pipe-Water-pipe/48001294/06C121085F.html (last visited October 4, 2022).
[8] https://parts.audiusa.com/p/Audi__/Engine-Coolant-Pipe-Pipe-ASSEMBLY-Tube-Water-pipe-2012-15-30-LITER-GAS/65561269/06E121045BB.html?clickSource=relatedProduct (last visited October 4, 2022).

62.    The image below shows where the crossover pipe and coolant pipe are located respective to the Water Pump in Class Vehicles:



63.    When hot engine coolant leaks from the Water Pump in Class Vehicles into the engine compartment, it creates a dangerous condition, can damage other vital engine components, and can cause total engine failure.

64.    Additionally, the Water Pump Defect reduces the amount of engine coolant in the system, eventually resulting in a loss of all coolant in the Class Vehicles. Engine coolant prevents the engines from freezing in cold weather and overheating in warm weather. A loss of engine coolant further impairs the Class Vehicles' ability to regulate the temperature of the engines.

65.    The Water Pumps in the Class Vehicles are not maintenance items and should last for the life the Class Vehicles. Plaintiffs' experiences, as well as the experiences of the Class, demonstrate that the Water Pumps fail well before the end of the useful life of the Class Vehicles.

C. **Defendant's Knowledge of the Water Pump Defect**

66.    Upon information and belief, Defendants regularly monitor the NHTSA databases as part of their ongoing obligation to identify potential defects in its vehicles. Examples of the complaints about Class Vehicles can be found below. NHTSA complaints establish that Defendants knew, or should have known, of the Defect *at least* as early November 2, 2018, based on publicly available information through (1) Defendants' own records of customers' complaints, (2) dealership repair records, (3) records from NHTSA, (4) warranty and post-warranty claims, (5) pre-sale durability testing and part sales, and (6) other various sources.

67.    Defendants tout their quality efforts to investors:

> Every day, we actively assume and exercise responsibility in relation to the environment, safety and society, and we wish to be a role model in these areas. Integrity, reliability, quality and passion thus form the basis for our work. In this way, we will aim for technological leadership in the industry, ensure our competitive profitability and remain an excellent, reliable and secure employer at the same time.[9]

68.    Defendants further tell investors about their Together 2025+ Strategy as part of their quality control efforts:

> Delivering outstanding quality and reliable mobility to customers worldwide is the strategic objective of the Quality Assurance department. As the "voice of the customer" the principle of dual control is relied on in critical company processes; products that are superior to those of the competition are developed within budget requirements. The department's commitment to quality runs the gamut of current and future mobility solutions – vehicles as well as services. Last but not least, all markets will pay close attention to differing regional needs to make a substantial contribution to the Volkswagen Group's sustainable growth.[10]

69.    Through their quality control measures, Defendants knew or should have known of the Water Pump Defect.

---

[9]  https://annualreport2018.volkswagenag.com/servicepages/downloads/files/entire_vw_ar18.pdf (last visited June 18, 2021).

[10] https://www.volkswagenag.com/en/group/strategy.html  (last visited June 18, 2021).

D.  **Complaints by Other Class Members**

70.    Plaintiffs' experiences are by no means isolated or outlying occurrences. Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same Water Pump Defect in the Class Vehicles.[11]

71.    The Office of Defects Investigation within NHTSA conducts defect investigations and administers safety recalls to support NHTSA's mission to improve safety on the Nation's highways.[12] All vehicle manufacturers, including Defendants, are legally obligated to routinely monitor and analyze NHTSA complaints in order to determine whether vehicles or automotive components should be recalled due to safety concerns, and Defendants thus had knowledge of any and all NHTSA complaints.  *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

72.    The following is just a small sampling of the many complaints submitted to NHTSA by Class Vehicle owners. These publicly-available complaints evidence Defendants' prior knowledge of the Water Pump Defect, the negative experiences encountered by Class Members, and the financial burden this places on them.

> **NHTSA ID Number:** 11486864
> **Incident Date** July 27, 2022
> **Complaint Date** September 28, 2022
> **Consumer Location** KATY, TX
> **Vehicle Identification Number** wa1anafy5l2****
> **Summary of Complaint**
> I have this car and it "drinks" about 300mL of coolant between 800-1000 miles. I have to add coolant once a while, but not much... Went to the dealership and they did an inspection

---

[11] *See*, *e.g.*, https://www.audizine.com/forum/showthread.php/907525-CREC-3-0T-water-pump-failures-(yes-plural-as-in-multiple) (last visited October 4, 2022); https://www.audiworld.com/forums/q7-mkii-discussion-211/water-pump-failure-2916483 (last visited October 4, 2022); https://www.audiworld.com/forums/a6-s6-c5-platform-discussion-7/water-pumps-fail-after-10-12k-miles-3-0l-2936133/ (last visited October 4, 2022).

[12] *See* NHTSA – MOTOR VEHICLE DEFECTS AND SAFETY RECALLS: WHAT EVERY VEHICLE OWNER SHOULD KNOW, https://www.odi.nhtsa.dot.gov/recalls/recallprocess.cfm. (last visited June 18, 2021), Vehicle manufacturers are required by law to report any potential safety defects to the United States government.

and pressure test and came back all normal. They told me the car will use coolant during summer?! I see many other people having similar issues on the Audi Forum. Please investigate as VW tends to make poor-quality water pupmp and I hope it is not the engine consuming it...

**NHTSA ID Number:** 11480007
**Incident Date** August 12, 2022
**Complaint Date** August 18, 2022
**Consumer Location** CANTON, MI
**Vehicle Identification Number** WA1VAAF74JD****
**Summary of Complaint**
At approx 56,600 miles I received a low engine coolant error on my vehicle. Upon inspection, all engine coolant was gone from the tank. Engine coolant was refilled by me at home. The next day, I received a low oil error on my vehicle. Upon inspection, the oil was below the minimum level. 1 quart of oil was added to my vehicle and we promptly took the vehicle in for inspection as this did not seem like a coincidence. Upon inspection at Motor City Euro Repair, it was noted that the water pump was leaking causing the engine coolant and oil levels to decrease. Water pump replacement required, which should typically not be a required repair until 100,000 miles. Audi is aware of this issue, but no recall has been made. There is also a class action lawsuit for this issue, but the 2018 Q7 Prestige 3.0 is not part of the vehicles in the suit. Total cost of repair was $1,375 as the vehicle is 6,600 miles out of warranty. Again, this is a know Volkswagen/Audi issue and Audi US is not recalling.

**NHTSA ID Number:** 11478185
**Incident Date** August 8, 2022
**Complaint Date** August 8, 2022
**Consumer Location** SHORELINE, WA
**Vehicle Identification Number** WAU2GAFC0GN****
**Summary of Complaint**
Around 36k miles the vehicle had some dried coolant residue and required coolant topups every 2-3k miles. Two different dealerships performed comprehensive inspections between then and now and did not notify me of any problems. The residue was explained away in a service bulletin stating that it was normal for the water pump to weep some coolant. Now at 44k miles, I brought the car in when I saw dried coolant residue and it seemed to require coolant more frequently. Dealer notified me that the engine water pump has failed and requires replacement.

**NHTSA ID Number:** 11477218
**Incident Date** June 25, 2022
**Complaint Date** August 2, 2022
**Consumer Location** SAN JOSE, CA
**Vehicle Identification Number** WAUGFAFC8FN****
**Summary of Complaint**

The defect of water pump used by this model causes coolant leakage and a serious overheating problem that triggers the temperature warning light. It is a safety risk without repairing this.

**NHTSA ID Number:** 11465120
**Incident Date** May 17, 2022
**Complaint Date** May 18, 2022
**Consumer Location** GRAYSLAKE, IL
**Vehicle Identification Number** WA1LFAFP1FA****
**Summary of Complaint**
The contact owns a 2015 Audi Q5. The contact stated while the vehicle was stationary, he became aware of a coolant leak underneath the vehicle. The contact towed the vehicle to an independent mechanic and was informed that the water pump was be replaced. The vehicle was not repaired. The contact called the local dealer and made them aware of the failure. Upon investigation, the contact associated the failure with NHTSA Campaign Number: 18V229000 (Engine and Engine Cooling) however, the VIN was not included. The manufacturer had been informed of the failure. The failure mileage was approximately 68,000.

**NHTSA ID Number:** 11464921
**Incident Date** May 14, 2022
**Complaint Date** May 17, 2022
**Consumer Location** PHILADELPHIA, PA
**Vehicle Identification Number** WA1LAAF76JD****
I purchased car July 2nd 2021 with 74956 miles, I just had it towed to audi do to coolant level light coming on. I purchased extended warranty at time of purchase and though this would be covered but was told warranty only covers water pump not the thermostat. Now they are demanding over 2100 to fix. I have seen several other audi owners that have experienced similar issues and believe this could be a dangerous to the owners especially when going on a long trip which my leave you stranded.

**NHTSA ID Number:** 11460609
**Incident Date** April 11, 2022
**Complaint Date** April 12, 2022
**Consumer Location** DUBLIN, CA
**Vehicle Identification Number** WA1AABF73HD****
**Summary of Complaint**
2017 Audi Q7 - 26K miles. During oil change visit - multipoint inspection, dealer service center informed me about the fluid leak and it warrants a water pump replacement/repair which cost around $1500. No sign of this failure, just out of warranty and they're able to find now.

**NHTSA ID Number:** 11460053
**Incident Date** April 7, 2022
**Complaint Date** April 7, 2022
**Consumer Location** SAN ANTONIO, TX

**Vehicle Identification Number** WA1LFAFP1FA****
**Summary of Complaint**
A "turn off engine, check coolant level" warning appeared and the engine overheated within the same day. The vehicle was taken to a repair shop who found a faulty water pump that required replacement to fix the issue.

**NHTSA ID Number:** 11457898
**Incident Date** February 1, 2022
**Complaint Date** March 22, 2022
**Consumer Location** VIENNA, VA
**Vehicle Identification Number** WA1LAAF77JD****
**Summary of Complaint**
Water pump stopped working properly, creating hazardous situation with my car. Had the car overheated and stopped working while driving, this could have been catastrophic. The only symptom was loss of coolant and resulting warning message from the car. I took it to an independent service center, who diagnosed the problem and replaced at my own expense of $961.07.

**NHTSA ID Number:** 11451741
**Incident Date** July 17, 2021
**Complaint Date** February 13, 2022
**Consumer Location** DUBLIN, OH
**Vehicle Identification Number** wa1vaaf7xhd****
**Summary of Complaint**
The water pump, thermostat housing, thermostat, and coolant crossover pipe were replaced to address a coolant leak issue. This was a repair done outside of the warranty at a cost of $2025. The mileage on the car was 65893.

**NHTSA ID Number:** 11450435
**Incident Date** January 26, 2022
**Complaint Date** February 4, 2022
**Consumer Location** MULLICA HILL, NJ
**Vehicle Identification Number** wa1laaf77kd****
**Summary of Complaint**
With 49,520 miles, low coolant warning came on during vehicle start up. Periodic checks had not revealed a drop in coolant. Added coolant to minimum line, and drove to dealer for 50k mile servicing. Water pump had failed! Good thing it was under warranty. Replaced at no cost. It would have been a $1500 repair otherwise. Water pumps should not fail at 50k miles, not on a car this expensive. Audi had a massive recall on earlier model years of this car - it appears the current design is no better.

**NHTSA ID Number:** 11447125
**Incident Date** January 11, 2022
**Complaint Date** January 11, 2022
**Consumer Location** COSTA MESA, CA
**Vehicle Identification Number** WA1VABF76HD****

**Summary of Complaint**

This car has been regularly serviced by Audi for it's entire lifespan. Today during service, the Audi technician discovered that the water pump had cracked and was leaking coolant onto the engine. The repair will cost me $1500 out of pocket, and neither the dealership nor Audi will offer any assistance. This issue is commonly documented as highly prevalent in the 2017 Q7, among other models.

**NHTSA ID Number:** 11440131
**Incident Date** November 10, 2021
**Complaint Date** November 11, 2021
**Consumer Location** BUFFALO GROVE, IL
**Vehicle Identification Number** WA1LAAF78HD****
**Summary of Complaint**

Water pump is leaking coolant - Car was purchased brand new and all services performed on time and it has only 26K miles with no accident history - Audi has recalled multiple other models but this issue is also affecting the 2017 Q7 model which is not listed in the recall below: https://www.cnet.com/roadshow/news/audi-recall-a4-a5-a6-q5-defective-water-pumps/#:~:text=Audi%20A4%2C%20A5%2C%20A6%20and%20Q5%20models%20are%20all%20affected.&text=A%20potential%20fire%20in%20a,worldwide%20for%20coolant%20pump%20issues.&text=The%20other%20has%20moisture%20within,causing%20a%20potential%20short%2Dcircuit.

**NHTSA ID Number:** 11439943
**Incident Date** November 2, 2021
**Complaint Date** November 9, 2021
**Consumer Location** MECHANICSVILLE, VA
**Vehicle Identification Number** Wa1laaf78hd****
**Summary of Complaint**

Failed water pump at 67,000 miles. The vehicle started with a slow leak and coolant smell, but escalated to losing one liter of coolant each day in about a month. Potential for overheating and fires.

**NHTSA ID Number:** 11439173
**Incident Date** November 2, 2021
**Complaint Date** November 3, 2021
**Consumer Location** DOWNERS GROVE, IL
**Vehicle Identification Number** WA1VAAF7XHD****
**Summary of Complaint**

At 35,400 miles, the car indicated low coolant via dash message. Audi dealer then diagnosed as a leaking water pump that requires replacement. Continued driving could have led to complete engine failure, since the engine would overheat and be destroyed by a lack of coolant. This type of water pump failure should never happen at such low mileage, yet this is a common problem with Audi models. I had to pay out of pocket for repairs.

**NHTSA ID Number:** 11438114

**Incident Date** October 25, 2021
**Complaint Date** October 25, 2021
**Consumer Location** WESTBOROUGH, MA
**Vehicle Identification Number** WA1VAAF75HD****
**Summary of Complaint**
Car has 50k miles on it and was told by the dealer the water pump needs to be replaced!

**NHTSA ID Number:** 11437144
**Incident Date** October 11, 2021
**Complaint Date** October 18, 2021
**Consumer Location** BRISTOL, CT
**Vehicle Identification Number** WA1LAAF77HD****
**Summary of Complaint**
main water pump failure at 45 K witout any leaks or warning signs . confirmed by independent repair shop . spoked with other shops and its seams like common almoust guaranteed failure because of use plastic parts inside pump unit . average pump life span 15 - 40 .000 miles . cost to repair 1200 $ and week that took to get parts

**NHTSA ID Number:** 11434964
**Incident Date** September 29, 2021
**Complaint Date** September 30, 2021
**Consumer Location** AUGUSTA, GA
**Vehicle Identification Number** WA1CCAFP5HA****
**Summary of Complaint**
The contact owns a 2017 Audi SQ5. The contact stated there was excessive heat coming from the engine. Additionally, there was moisture on the water pump. A message stating "Pull Over Immediately" was displayed. The vehicle was taken to the local dealer to be diagnosed. The contact was informed that the water pump failed and needed to be replaced. The manufacturer was notified of the failure however, no further assistance was provided. The failure mileage was approximately 30,000.

**NHTSA ID Number:** 11434763
**Incident Date** September 13, 2021
**Complaint Date** September 28, 2021
**Consumer Location** SEATTLE, WA
**Vehicle Identification Number** WA1LAAF75HD****
**Summary of Complaint**
Water pump failed at 42,xxx miles, well below the 50,000 mile warranty of the vehicle. Totally unacceptable for this type of luxury SUV and no support from Audi or my local dealer to cover any of the nearly $1500 charges to replace the water pump and refill / test the system with coolant. If the car wasn't in my garage at home, I could have been left stranded several hundred miles from any type of service or repairs. This is a common problem with other previous Audi SUVs and there should be an extended warranty for these repairs, something the manufacturer didn't build the car right to save a few dollars and leaving Owners to foot the high repair bills and deal with being stranded. If this would have happened while driving on the highway, my engine could have overheated and caught

24

fire or caused a high-speed accident, possibly injuring me, my family, and others. The vehicle has been repaired by the Audi dealer but at a very high cost. There were no warning lamps, messages or other symptoms of the problem prior to the failure.

**NHTSA ID Number:** 11434309
**Incident Date** September 24, 2021
**Complaint Date** September 24, 2021
**Consumer Location** COLUMBIA, MO
**Vehicle Identification Number** WAUDFAFC4DN****
**Summary of Complaint**
I start getting coolant leak and it was at Audi dealership. Nothing was done just today get biger leak and took to shop and they say my water pump is broken. I think this is part of Audi A6 2013 water oump problems. Need to fix it

**NHTSA ID Number:** 11420231
**Incident Date** June 8, 2021
**Complaint Date** June 9, 2021
**Consumer Location** Unknown
**Vehicle Identification Number** wa1vaaf70hd****
**Summary of Complaint**
Premature Water Pump Failure. I took our 2017 Audi Q7 into the dealer for a 60k mi service. The vehicle has been serviced as recommended by Audi at the dealership at every interval. On this visit everything looked normal but they discovered a leak in the water pump. Quoted a $2100 repair. We are out of warranty. Talking to other Audi Q7 owners, many have had premature water pump failures. Some were covered by warranty, others not. The Water Pump is an essential component and if it fails, it could leave the driver and occupants stranded due to an overheated engine.

**NHTSA ID Number:** 11416039
**Incident Date** May 4, 2021
**Complaint Date** May 11, 2021
**Consumer Location** DANVILLE, CA
**Vehicle Identification Number** WA1VAAF70HD****
**Summary of Complaint**
WATER PUMP FAILED  WITH 47K FILES - THERE SEEM TO BE A LOT OF THESE ISSUE WITH MULTIPLE Q7 OWNERS. IT SEEMS LIKE THERE WAS A MANUFACTURING DEFECT.

**NHTSA ID Number:** 11414535
**Incident Date** April 25, 2021
**Complaint Date** April 29, 2021
**Consumer Location** DALLAS, TX
**Vehicle Identification Number** WA1CCAFP4GA****
**Summary of Complaint**
THE ORIGINAL ENGINE WATER PUMP FAILED AT 18,313 MILES ON MAY 12, 2019. THE REPLACED ENGINE WATER PUMP HAS FAILED AGAIN AT 24,700

MILES ON APRIL 25. 2021. THIS IS COMPLETELY UNACCEPTABLE AND UNSAFE.

**NHTSA ID Number:** 11399049
**Incident Date** December 23, 2019
**Complaint Date** March 3, 2021
**Consumer Location** HUMBLE, TX
**Vehicle Identification Number** WA1VAAF79HD****
**Summary of Complaint**
HI THERE I PURCHASED A USED 2017AUDI Q7 3.0T WITH ABOUT 65K MILES IN OCTOBER OF 2019 AND A COUPLE OF WEEKS LATER I NOTICED THAT THE ANTIFREEZE BOTTLE WAS ALWAYS LOW SO I HAD TO KEEP ADDING.THERE WAS NO LEAK IN THE GARAGE BUT YOU CAN CERTAINLY SMELL THE ANTIFREEZE. I CHECKED ON GOOGLE AND OTHER FORUMS AND LEARNED THERE IS A PROBLEM WITH THE WATER PUMP. SO IF OTHER PEOPLE IS HAVING THE SAME PROBLEM I THINK AUDI SHOULD LOOK INTO FIXING IT .THANK YOU

**NHTSA ID Number:** 11395095
**Incident Date** December 15, 2020
**Complaint Date** February 7, 2021
**Consumer Location** LEXINGTON, KY
**Vehicle Identification Number** WA1LAAF71HD****
**Summary of Complaint**
WATER PUMP LEAKED AND HAD TO BE REPLACED AT 50,000 MILES AND 4 1/2 YEARS OLD.

**NHTSA ID Number:** 11376098
**Incident Date** November 17, 2020
**Complaint Date** November 24, 2020
**Consumer Location** HATCHECHUBBEE, AL
**Vehicle Identification Number** WAU3GAFD1FN****
**Summary of Complaint**
BAD WATER PUMP AND CROSS BAR

**NHTSA ID Number:** 11301301
**Incident Date** January 22, 2020
**Complaint Date** January 23, 2020
**Consumer Location** GREAT NECK, NY
**Vehicle Identification Number** WA1D7AFPXGA****
**Summary of Complaint**
IS AN AUDI Q5 3T AND THE WATER PUMP BROKE, LEADING TO LEAKING OF THE COOLANT AND OVERHEAT THE ENGINE, THE Q5 WITH 2T ENGINES ALREADY HAVE THE RECALL FOR WATER PUMP PROBLEMS , BUT AUDI DOES NOT WANT TO APPLY THIS RECALL FR THE 3T , THIS HAPPENED WHEN I WAS IN THE HIGHWAY AND I HAD TO POOL OVER .

**NHTSA ID Number:** 11144967
**Incident Date** February 27, 2018
**Complaint Date** November 2, 2018
**Consumer Location** BELTSVILLE, MD
**Vehicle Identification Number** WAUDFAFC3DN****
**Summary of Complaint**
VEHICLE BEGAN SHAKING, DRIVING VERY ROUGH AND CHECK ENGINE
LIGHT CAME AND EPC LIGHTS CAME ON THE DASH. CAR WAS NOT
DRIVABLE. THIS HAPPENED LESS THAN TWO MONTHS AFTER I HAD THE
WATER PUMP REPLACED FOR LEAKAGE AND FAILURE (WHICH HAS NOW
BEEN RECALLED). I BELIEVE THE TWO ARE CONNECTED, BUT AUDI
CHARGED ME A TO REPLACE THE ENGINE. I FEEL THAT THE ENGINE
FAILURE WAS A DIRECT LINK TO THE ISSUE WITH THE PUMP.

### E. Defendants' Warranty Practices

73.    Despite longstanding knowledge of the Defect as set forth above, Defendants refuse

to provide warranty coverage for the repairs when the Defect manifests.

74.    For the Audi-branded Class Vehicles, Defendants provided a 4-year/50,000-mile

New Vehicle Limited Warranty.

75.    Nevertheless, when Class members seek warranty coverage for the Defect, even

within the warranty period, Defendants often fail to respond or deny warranty coverage.

76.    Moreover, some Class Vehicles manifest the Defect just outside Defendants'

warranty period. But the mileage and temporal limitations Defendants impose on their warranty

are unconscionable and unenforceable.

77.    Defendants provide this New Vehicle Limited Warranty to buyers after a purchase

is complete. Buyers like Plaintiffs and Class members lack pre-sale knowledge of the Defect or

the ability to bargain as to the terms of the Defendants' warranty.  Accordingly, the limitations

Defendants impose on the Limited Warranty—and their efforts to disclaim any implied

warranties—are procedurally unconscionable because there was unequal bargaining power

between Defendants and Plaintiffs and the other Class members, as, at the time of purchase,

Plaintiffs and the other Class members had no other options for purchasing from Defendants alternative warranty coverage for Class Vehicles.

78.    All of the purported limitations on the warranty, including the time and mileage limits, are also substantively unconscionable. Defendants knew Class Vehicles suffered from the Defect and that the Defect would continue to pose safety risks after the warranty purportedly expired, yet failed to disclose the Defect to Plaintiffs and the other Class members while continuing to market Class Vehicles as safe and reliable.  Defendants' enforcement of those limitations is thus harsh and shocks the conscience.

79.    Defendants' efforts to evade their warranty obligations with respect to the known Defect, coupled with their refusal to cover the Defect if it manifests outside the warranty's stated term, deprives Plaintiffs and Class members of the benefit of their bargain, forcing them to pay out of pocket to repair a defect present in Class Vehicles at the time of purchase.

<u>**CLASS ACTION ALLEGATIONS**</u>

80.    Plaintiffs bring this action on behalf of themselves, and on behalf of the following class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the proposed nationwide class is defined as follows:

<u>**Nationwide Class:**</u>
All persons or entities in United States who are current or former owners and/or lessees of a Class Vehicle (the "Nationwide Class").

81.    In the alternative to the Nationwide Class, and pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiffs seek to represent the following state subclasses ("State Classes"):

<u>**California Class:**</u>
All persons or entities who are: (1) current or former owners and/or lessees of a Class Vehicle; and (2) reside in California or purchased a Class Vehicle for primarily personal, family or household purposes, as defined by California Civil Code § 1791(a), in California.

**Massachusetts Class:**
All persons or entities who are: (1) current or former owners and/or lessees of a
Class Vehicle; and (2) reside in Massachusetts.

82.    Together, the Nationwide Class and the State Classes shall be collectively referred

to herein as the "Class."

83.    Excluded from the Class and State Classes are Defendants, their affiliates,

employees, officers and directors, persons or entities that purchased the Class Vehicles for resale,

and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the

Class definitions after conducting discovery.

84.    <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of

all members is impracticable. While the exact number and identities of individual members of the

Class is unknown at this time, such information being in the sole possession of Defendant and

obtainable by Plaintiffs only through the discovery process, Plaintiffs believe that tens of

thousands of Class Vehicles have been sold and leased throughout the United States, including

thousands within each of the state Subclasses.

85.    <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common

questions of law and fact exist as to all members of the Class. These questions predominate over

the questions affecting individual Class members. These common legal and factual questions

include, but are not limited to:

      a.    whether the Class Vehicles are predisposed to the Defect;

      b.    whether Defendants knowingly failed to disclose the existence and cause of the
          Water Pump Defect;

      c.    when Defendants first learned of the Water Pump Defect;

      d.    whether Defendants' conduct constitutes a violation of the state consumer
          protection statutes asserted herein;

      e.    whether Defendants' conduct violates the Magnuson-Moss Warranty Act;

    f.   whether Defendants' conduct constitutes a breach of express warranty;

    g.   whether Defendants' conduct constitutes a breach of implied warranty;

    h.   whether Defendants' conduct constitutes common law fraud;

    i.   whether Defendants' conduct constitutes unjust enrichment; and

    j.   whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

86.   <u>Typicality</u>: All of Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and each member of the Class purchased or leased a Class Vehicle with the Water Pump Defect. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

87.   <u>Adequacy</u>: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel that are competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

88.   <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent

or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers (VINs), warranty claims, registration records, and the database of complaints.

89.    Injunctive Relief: Pursuant to Fed. R. Civ. P. 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief, corresponding declaratory relief, or final equitable relief with respect to the class as a whole.

### FIRST CAUSE OF ACTION
**VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(On Behalf of the California Class)**

90.    Plaintiff Fiscina and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

91.    Plaintiff Fiscina brings this claim on behalf of himself and on behalf of the California Class against Defendants.

92.    Defendants are persons as that term is defined in California Civil Code § 1761(c).

93.    Plaintiff Fiscina and the California Class Members are "consumers" as that term is defined in California Civil Code §1761(d).

94.    Defendants engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiff Fiscina and California Class Members that the Class Vehicles suffer from a defect(s) (and the costs, risks,

and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of the CLRA:

> (a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

> (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

> (a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

> (a)(9) Advertising goods and services with the intent not to sell them as advertised.

95.    Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

96.    Defendants knew that the Class Vehicles were defectively manufactured, would fail prematurely, and were not suitable for their intended use.

97.    Defendants were under a duty to Plaintiff Fiscina and the California Class Members to disclose the defective nature of the Class Vehicles because:

> a.    Defendants were in a superior position to know the true state of facts about the safety defect and associated repair costs in the Class Vehicles;

> b.    Plaintiff Fiscina and the California Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had a dangerous safety defect until manifestation of the Defect;

> c.    Defendants knew that Plaintiff Fiscina and the California Class Members could not reasonably have been expected to learn or discover the safety and security defect and the associated repair costs that it causes until the manifestation of the Defect; and

> d.    Defendants actively concealed the safety and security defect and the associated repair costs by asserting to Plaintiff Fiscina and the California Class Members that their vehicles were not defective.

98.    In failing to disclose the Defect and the associated safety risks and repair costs that result from it, Defendants have knowingly and intentionally concealed material facts and breached their duty to disclose.

99.    The facts concealed or not disclosed by Defendants to Plaintiff Fiscina and the California Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price. Had Plaintiff Fiscina and the California Class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

100.    On or about September 2, 2022, Plaintiff Fiscina provided Defendants with notice of their violations of the CLRA pursuant to California Civil Code § 1782(a) and seeks both injunctive relief and monetary damages, including actual, restitutionary, and punitive damages.

101.    Plaintiff Fiscina's and the other California Class Members' injuries were proximately caused by Defendants' fraudulent and deceptive business practices.

102.    Therefore, Plaintiff Fiscina and the other California Class Members seek all relief available under the CLRA.

## SECOND CAUSE OF ACTION
### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
**(Cal. Bus. & Prof. Code § 17200)**
**(On Behalf of the California Class)**

103.    Plaintiff Fiscina and the California Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

104.    Plaintiff Fiscina brings this claim on behalf of himself and on behalf of the California Class against Defendants.

105.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair

competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

106.   Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff Fiscina and the California Class Members that the Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles as a result of these problems). Defendants should have disclosed this information because they were in a superior position to know the true facts related to the Defect, and Plaintiff Fiscina and California Class Members could not reasonably be expected to learn or discover the true facts related to the Defect.

107.   The defective Water Pumps constitute a safety issue that triggered Defendants' duty to disclose the safety issue to consumers.

108.   These acts and practices have deceived Plaintiff Fiscina and are likely to deceive the public. In failing to disclose the Defect and suppressing other material facts from Plaintiff Fiscina and California Class Members, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff Fiscina and California Class Members. The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiff Fiscina and California Class Members, as it would have been to all reasonable consumers.

109.   The injuries suffered by Plaintiff Fiscina and California Class Members are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff Fiscina and California Class Members should have reasonably avoided.

110.   Defendants' acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

111.    Plaintiff Fiscina seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

### THIRD CAUSE OF ACTION
### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### (Cal. Bus. & Prof. Code § 17500, et seq.)
### (On Behalf of the California Class)

112.    Plaintiff Fiscina and the California Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

113.    Plaintiff Fiscina brings this claim on behalf of himself and on behalf of the California Class against Defendants.

114.    California Business & Professions Code § 17500 states:

It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

115.    Defendants caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiff Fiscina and the California Class Members.

116.    Defendants have violated § 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of their Class Vehicles as set forth in this

Complaint were material and likely to deceive a reasonable consumer.

117.    Plaintiff Fiscina and the other California Class Members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiff Fiscina and the other California Class Members relied on Defendants' misrepresentations and/or omissions with respect to the safety and reliability of the Class Vehicles. Defendants' representations were untrue because the Class Vehicles are distributed with defective Water Pumps that can cause catastrophic engine failure. Had Plaintiff Fiscina and the other California Class Members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them. Accordingly, Plaintiff Fiscina and the other California Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

118.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

119.    Plaintiff Fiscina, individually and on behalf of the other California Class Members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff Fiscina and the other California Class Members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## FOURTH CAUSE OF ACTION
### VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT - BREACH OF EXPRESS WARRANTY
### (Cal. Civ. Code §§ 1791.2 & 1793.2(d))
### (On Behalf of the California Class)

120.    Plaintiff Fiscina and the California Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

121.    Plaintiff Fiscina brings this claim on behalf of himself and on behalf of the California Class against Defendants.

122.    Plaintiff Fiscina and the other California Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

123.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

124.    Defendants are "manufacturers" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

125.    Defendants made express warranties to Plaintiff Fiscina and the other California Class members within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, as described above.

126.    Plaintiff Fiscina and the other California Class members have requested repairs of the Defect pursuant to the express warranty but have failed to receive such repairs.

127.    Pursuant to Cal. Civ. Code §§ 1793.2 and 1794, Plaintiff Fiscina and the other California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

128.    Pursuant to Cal. Civ. Code § 1794, Plaintiff Fiscina and the other California Class members are entitled to costs and attorneys' fees.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT -**
**BREACH OF IMPLIED WARRANTY**
**(Cal. Civ. Code §§ 1791.2 & 1792)**
**(On Behalf of the California Class)**

129.    Plaintiff Fiscina and the California Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

130.    Plaintiff Fiscina brings this claim on behalf of himself and on behalf of the California Class against Defendants.

131.    Plaintiff Fiscina and the other California Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

132.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

133.    Defendants are "manufacturers" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

134.    Defendants impliedly warranted to Plaintiff Fiscina and the other California Class Members that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1 & 1792.

135.    However, the Class Vehicles do not have the quality that a reasonable purchaser would expect.

136.    Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: "(1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; … and (4) conform to the promises or affirmations of fact made on the container or label."

137.    The Class Vehicles would not pass without objection in the trade because of the Defect.

138.    The Class Vehicles are not fit for the ordinary purpose for which they are used because of the Defect.

139.    The Class Vehicles do not conform to the promises or affirmations of fact made by Defendants.

140.    Defendants breached the implied warranty of merchantability by manufacturing and selling Class Vehicles containing the Defect. The existence of the Defect has caused Plaintiff Fiscina and the other California Class members to not receive the benefit of their bargain and have caused Class Vehicles to depreciate in value.

141.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Fiscina and the other California Class members received goods whose defective condition substantially impairs their value to Plaintiff Fiscina and the other California members. Plaintiff Fiscina and the other California Class members have been damaged as a result of the diminished value of the Class Vehicles.

142.    Plaintiff Fiscina and the other California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

143.    Pursuant to Cal. Civ. Code § 1794, Plaintiff Fiscina and the other California Class members are entitled to costs and attorneys' fees.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT**
**("MCPA"), Mass. Gen. Laws 93A, § 1, *et seq.***
**(On Behalf of the Massachusetts Class)**

144.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

145.    Plaintiff Duarte brings this cause of action on behalf of himself and the Massachusetts Class against all Defendants.

146.    Plaintiff Duarte, members of the Massachusetts Class, and Defendants are "persons" within the meaning of Mass. Gen. Laws 93A § 1(a).

147.    Defendants are engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws 93A, § 1(b).

148.    The MCPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws 93A § 2(a).

149.    In the course of their business, Defendants violated the MCPA by misrepresenting to Plaintiff and the Class the true capabilities and functionality of the Class Vehicles and that the Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles as a result of these problems). Defendants should have disclosed this information because they were in a superior position to know the true facts related to the Defect, and Plaintiff and the Class Members could not reasonably be expected to learn or discover the true facts related to the Defect.

150.    Defendants committed unconscionable, deceptive and unfair trade practices, including, but not limited to, deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the Defect with the intent that Plaintiff and members of the Massachusetts Class would rely upon their

misrepresentations and omissions in connection with the sale and/or advertisement of Class Vehicles.

151.    Defendants violated the MCPA by: (i) representing that the Class Vehicles have characteristics, uses, benefits, or qualities they do not have; (ii) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; and/or (iii) advertising the Class Vehicles with the intent not to sell them as advertised.

152.    Defendants intended that Plaintiff and members of the Massachusetts Class would, in the course of their decision to expend money in purchasing, leasing and/or repairing Class Vehicles, reasonably rely upon misrepresentations, misleading characteristics and material omissions concerning the quality and functionality of the Class Vehicles, with respect to their manufacture, workmanship, and the information in the owner's manuals.

153.    Information regarding the Defect as described herein is material to consumers in that the Defect results in overpayment for a defective vehicle and poses a safety risk.

154.    Defendants failed to disclose and omitted the existence of the Defect in the Class Vehicles. Defendants' omissions caused Plaintiff and the members of the Massachusetts Class to be unaware at the time of their purchase of their Class Vehicles that the Defect and its corresponding safety risk existed.

155.    Defendants intentionally and knowingly failed to disclose and misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the members of the Massachusetts Class.

156.    Defendants' deceptive conduct was likely to deceive a reasonable consumer, and did in fact deceive reasonable consumers including Plaintiff and members of the Massachusetts Class

157.    Plaintiff and the other Massachusetts Class Members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiff and the other Massachusetts Class Members relied on the misrepresentations and/or omissions of Defendants with respect to the safety and reliability of the Class Vehicles. Defendants' representations were untrue because the Class Vehicles are distributed with the Defect, which can cause catastrophic engine failure. Had Plaintiff and the other Massachusetts Class Members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them. Accordingly, Plaintiff and the other Massachusetts Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain

158.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of Massachusetts and nationwide.

159.    Plaintiff, individually and on behalf of the other Massachusetts Class Members, requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices.

160.    Notice of Plaintiff Duarte's claim under the MCPA was provided on September 2, 2022.

161.    Pursuant to Mass. Gen. Laws 93A, § 9, Plaintiff and members of the Massachusetts Class seek monetary relief against Defendants measured as the greater of (a) actual damages in the amount to be determined at trial and (b) statutory damages in the amount of $25 for each member of the Massachusetts Class, as well as costs and attorneys' fees. Because Defendants' conduct was

committed willfully and knowingly, Plaintiff and the members of the Massachusetts Class are entitled to recover, for each member of the Massachusetts Class, up to three times actual damages, but no less than two times actual damages.

## SEVENTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
**(On Behalf of the Nationwide Class Or, Alternatively, the State Classes)**

162.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

163.    Plaintiffs bring this cause of action on behalf of themselves and the Class against all Defendants, or in the alternative Plaintiff Fiscina brings this cause of action on behalf of himself and the California Class and Plaintiff Duarte brings this cause of action on behalf of himself and the Massachusetts Class.

164.    Defendants provided Plaintiffs and Class members with the express warranty set forth above.

165.    Specifically, Defendants warranted that the Class Vehicles were free from defects in materials or workmanship; and that in the event the Class Vehicles suffered from defects in either of these respects, Defendants would correct such defects at no cost to Plaintiffs or class members.

166.    The Class Vehicles were not free from defects in materials or workmanship because they suffer from the Water Pump Defect.

167.    Defendants have refused, and continue to refuse, to comply with the terms of their warranty to correct the Defect outlined above.

168.    Plaintiffs have complied with their obligations under the express warranty at all times relevant herein.

169.    As a result of Defendants' breach of express warranty, Plaintiffs and Class members have suffered damages.

170.    Defendants' conduct was done knowingly, wantonly, maliciously, and/or in conscious disregard for the rights of Plaintiffs and the Class and/or State Classes, justifying the imposition of punitive damages.

## EIGHTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY
**(On Behalf of the Nationwide Class Or, Alternatively, the State Classes)**

171.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

172.    Plaintiffs bring this cause of action on behalf of themselves and the Class against all Defendants, or in the alternative Plaintiff Fiscina brings this cause of action on behalf of himself and the California Class and Plaintiff Duarte brings this cause of action on behalf of himself and the Massachusetts Class.

173.    Defendants were at all relevant times the manufacturers, distributors, warrantors, and/or sellers of the Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.

174.    Defendants provided Plaintiff and the other Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles suffer from the Water Pump Defect, which causes the vehicles to experience premature and catastrophic engine failure. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

175.    Defendants impliedly warranted that the Class Vehicles were of merchantable

quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their engines were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation and would not experience premature and catastrophic engine failure; and (ii) a warranty that the Class Vehicles and their engines would be fit for their intended use while the Class Vehicles were being operated.

176.    Contrary to the applicable implied warranties, the Class Vehicles and their engines at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the other Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from manufacturing defect(s).

177.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

### NINTH CAUSE OF ACTION
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)
### (On Behalf of the Nationwide Class Or, Alternatively, the State Classes)

178.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

179.    Plaintiffs bring this cause of action on behalf of themselves and the Class against all Defendants, or in the alternative Plaintiff Fiscina brings this cause of action on behalf of himself and the California Class and Plaintiff Duarte brings this cause of action on behalf of himself and the Massachusetts Class.

180.    Plaintiffs and the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

181.    Defendants are suppliers and warrantors within the meaning of 15 U.S.C. §§ 2301(4)-(5).

182.    The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

183.    The warranties described above are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

184.    Defendants breached the express warranties by:

    a.    Providing warranties with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

    b.    Selling and leasing Class Vehicles that were defective in materials and/or workmanship, requiring repair or replacement within the warranty period; and

    c.    Refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, the component parts in order to remedy the Water Pump Defect.

185.    Plaintiffs and the other Class Members relied on the existence and length of the express warranties in deciding whether to purchase or lease the Class Vehicles.

186.    Defendants' breach of the express warranties has deprived Plaintiff and the other Class Members of the benefit of their bargain.

187.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

188.    Defendants have been afforded a reasonable opportunity to cure their breach of the written warranties and/or Plaintiffs and the other Class members were not required to do so because affording Defendants a reasonable opportunity to cure their breach of written warranties would have been futile. Defendants were also on notice of the alleged Defect from the complaints and service requests it received from Class members, as well as from their own warranty claims,

customer complaint data, and/or parts sales data.

189.    As a direct and proximate cause of Defendants' breach of the written warranties, Plaintiffs and the other Class members sustained damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiffs and the other Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

<u>**TENTH CAUSE OF ACTION**</u>
**COMMON LAW FRAUD**
**(On Behalf of the Nationwide Class Or, Alternatively, the State Classes)**

190.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

191.    Plaintiffs bring this cause of action on behalf of themselves and the Class against all Defendants, or in the alternative Plaintiff Fiscina brings this cause of action on behalf of himself and the California Class and Plaintiff Duarte brings this cause of action on behalf of himself and the Massachusetts Class.

192.    Defendants made material omissions concerning a presently existing or past fact. For example, Defendants did not fully and truthfully disclose to their customers the true nature of the Water Pump Defect, which was not readily discoverable until years later, often after warranty period expired. As a result, Plaintiffs and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the said Defect and all of the resultant problems.

193.    These omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and the Class members rely on them.

194.    Plaintiffs and the Class members reasonably relied on these omissions and suffered damages as a result.

**ELEVENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class Or, Alternatively, the State Classes)**

195.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

196.    Plaintiffs bring this cause of action on behalf of themselves and the Class against all Defendants, or in the alternative Plaintiff Fiscina brings this cause of action on behalf of himself and the California Class and Plaintiff Duarte brings this cause of action on behalf of himself and the Massachusetts Class.

197.    Plaintiffs and members of the Class conferred a benefit on Defendants. Although Plaintiffs purchased Class Vehicles from Defendants' authorized dealerships, the money Plaintiffs used to purchase the Class Vehicles flowed from Defendants' authorized dealership to Defendants.

198.    Defendants had knowledge that this benefit was conferred upon them.

199.    Defendants have been and continue to be unjustly enriched at the expense of Plaintiffs, and their retention of this benefit under the circumstances would be inequitable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.    appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

C.    award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D.      award pre-judgment and post-judgment interest on such monetary relief;

E.      grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect; and to correct their advertising and marketing practices as described herein;

F.      award reasonable attorney's fees and costs; and

G.      grant such further relief that this Court deems appropriate.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: October 4, 2022

Respectfully submitted,

*/s/ Matthew D. Schelkopf*
Matthew D. Schelkopf
Joseph B. Kenney
Mark B. DeSanto
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, PA 19312
Tel: (610) 200-0581
Facsimile: 610-421-1326
mds@sstriallawyers.com
jbk@sstriallawyers.com
mbd@sstriallawyers.com

*Attorneys for Plaintiffs and the putative Class*