## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW FISCINA and HANS CHOE, individually and on behalf of others similarly situated,<br><br>     Plaintiffs,<br><br>  vs.<br>VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation, d/b/a AUDI OF AMERICA, INC., VOLKSWAGEN AG, a German Corporation, and AUDI AG, a German Corporation,<br><br>     Defendants. | No. 2:22-cv-05875-ES-LDW |

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

---

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     FACTUAL BACKGROUND.................................................................2

        A.    Plaintiffs' Allegations and Pre-Litigation Investigation .....................2

        B.    History of the Litigation ..................................................................3

        C.    Settlement Negotiations ..................................................................4

        D.    Terms of the Settlement Agreement ................................................5

        E.    Service Awards and Class Counsel Fees and Expenses ...................11

        F.    Notification to Settlement Class Members .......................................12

        G.    Objections and Requests for Exclusion from the Settlement............13

        H.    The Release ...................................................................................14

        I.    The Preliminary Approval Order ....................................................14

III.    ARGUMENT.........................................................................................15

        A.    The Settlement is Fair, Reasonable, and Adequate...........................15

              1.    Presumption of fairness...........................................................15

              2.    The Girsh factors....................................................................17

              3.    The Prudential factors ............................................................24

        B.    The Objections Should be Overruled. ..............................................26

        C.    The Notice Satisfied Due Process and Rule 23................................38

              1.    Rule 23 ..................................................................................38

              2.    Due Process............................................................................39

        D.    The Court Should Reaffirm Certification of the Settlement
              Class. ..............................................................................................40

IV.     CONCLUSION.....................................................................................40

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................23

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) ......................................................................24

*California v. Teva Pharm. Indus.*,
   No. 19-3281, 2020 WL 3128027 (E.D. Pa. June 10, 2020) ......................... 23, 29

*In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig*,
   333 F.R.D. 364 (E.D. Pa. 2019) .................................................................25

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) .......................................................................15

*Gates v. Rohm & Haas Co.*,
   248 F.R.D. 434 (E.D. Pa. 2008) .................................................................16

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) .........................................................................15

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) ............................................................ *passim*

*Haas v. Burlington Cty*,
   No. 08-1102, 2019 WL 413530 (D.N.J. Jan. 31, 2019) ...............................21

*Henderson v. Volvo Cars of N. Am., LLC*,
   No. 09-cv-4146, 2013 WL 1192479 (D.N.J.  Mar. 22, 2013)........................39

*In re Ins. Brokerage Antitrust Litig*,
   282 F.R.D. 92 (D.N.J. 2012) ......................................................................37

*Mullane v. Cent. Hanover Bank & Trust Co*,
   339 U.S. 306 (1950) ...................................................................................39

*In re Nissan Radiator*,
No. 10-cv-7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) .........................19

*In re NFL Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016) ........................................................................ *passim*

*O'Keefe v. Mercedes-Benz USA, LLC*,
214 F.R.D. 266 (E.D. Pa. 2003) ...........................................................................35

*Oliver v. BMW of N. Am., LLC*,
No. 17-12979, 2021 WL 870662 (D.N.J. Mar. 8, 2021)......................................19

*In re Prudential Ins. Co. Am. Sales Practice Litig*,
148 F.3d 283 (3d Cir. 1998) ........................................................................ *passim*

*Shapiro v. All. MMA, Inc.*,
No. 17-2583, 2018 WL 3158812 (D.N.J. June 28, 2018) ....................................16

*In re Shop-Vac Mktg. & Sales Practices Litig.*,
No. 2380, 2017 WL 5517515 (M.D. Pa. May 25, 2016) .............................. 23, 34

*Skeen v. BMW of N. Am., LLC.*,
No. 2:13-cv-1531, 2016 WL 4033969 (D.N.J. July 26, 2016) .................... 29, 35

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ................................................................................23

*Udeen v. Subaru of Am., Inc.*,
No. 18-17334, 2019 WL 4894568 (D.N.J. Oct. 4, 2019)....................................16

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
2020 WL 1922902 (E.D. Pa. Apr. 21, 2020) ......................................................26

*Weiss v. Mercedes Benz of N. Am.*,
899 F. Supp. 1297 (D.N.J. 1995).................................................................. 18, 19

*Yaeger v. Subaru of Am., Inc.*,
No. 14-cv-4490, 2016 WL 4541861 (D.N.J. Aug. 31, 2016) ...................... *passim*

## I.    INTRODUCTION

Plaintiffs respectfully request that the Court issue an order granting final approval to the Settlement Agreement ("Settlement" or "SA"), certifying a class for settlement purposes only, and enter a final judgment dismissing this case with prejudice.[1] The Settlement was preliminarily approved on March 18, 2024, after having been negotiated at arms' length, including a full day mediation before Bradley A. Winters of JAMS. The terms of the SA create substantial benefits for more than 687,000 current and former owners and lessees of approximately 400,000 Settlement Class Vehicles; they are clearly fair, reasonable and adequate; and meet all of the requisite criteria under Fed. R. Civ. P. 23(e) for receiving final approval. The response by the Settlement Class Members has been overwhelmingly positive, and confirms that granting final approval is warranted.

As discussed below, the three objections to the Settlement are without merit and do not provide any basis to deny final approval. As such, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for final approval. A proposed order granting final approval will be submitted prior the Final Fairness Hearing, along with a list of individuals who timely opted out of the Settlement.

---

[1] The SA was submitted with Plaintiffs' Unopposed Motion for Preliminary Approval (ECF No. 33-3), and the capitalized terms used herein are defined in Section I of the SA.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs' Allegations and Pre-Litigation Investigation

Prior to initiating this case on October 4, 2022, Class Counsel conducted a robust pre-suit investigation that started in August 2022. Class Counsel interviewed numerous putative class members, collected and reviewed relevant documents such as service records from authorized Audi dealerships, reviewed the design of the engines and water pumps, consulted with automotive experts, and conducted a teardown analysis of a water pump to understand the root cause of the alleged defect.

Plaintiff Andrew Fiscina is a resident of California, purchased a Settlement Class Vehicle, experienced water pump failure, and incurred out of pocket expenses associated with the repair. (ECF No. 26, ¶¶ 17-23.) Plaintiff Hans Choe is a resident of Georgia, purchased a Settlement Class Vehicle, experienced water pump failure, and also incurred out of pocket expenses associated with the repair. (¶¶ 26-31.) The SAC seeks to certify both a Nationwide Class, as well as state sub-classes for residents of California and Georgia. (¶¶ 78-78.)

The SAC includes detailed allegations of the function of the Settlement Class Vehicles' Water Pumps and how the alleged defect leads them to prematurely fail. (¶¶ 47-63.) In short, Plaintiffs allege that the defect causes the bearings to fail, which in turn causes engine coolant to leak from the weep hole. (¶ 58.) The SAC also includes diagrams of the component parts of the Water Pumps and internal bearings,

as well as images of the Water Pump location in the Settlement Class Vehicles. (¶¶ 56-57, 59-61.) The SAC asserts claims pursuant to California's Consumer Legal Remedies Act, Unfair Competition Law, and False Advertising Law, Georgia's consumer protection laws, as well as for breach of express and implied warranty, common law fraud and unjust enrichment.[2]

## B.    History of the Litigation

Plaintiffs Andrew Fiscina and Kyle Duarte filed the initial complaint on October 4, 2022, and named Volkswagen Group of America, Inc. d/b/a Audi of America, Inc. ("VWGoA"), Volkswagen AG, and Audi AG as Defendants. (ECF No. 1.) The parties negotiated a stipulated protective order, which Judge Wettre signed on April 27, 2023. (ECF No. 24.) On June 26, 2023, Plaintiffs Andrew Fiscina and Hans Choe filed a First Amended Complaint. (ECF No. 26.) A stipulation of voluntary dismissal of Kyle Duarte's claims was filed on September 7, 2023. (ECF No. 32.) Pursuant to the Parties' Stipulation and Order dated August 9, 2023, VWGoA's time to respond to the First Amended Class Action Complaint was set for September 8, 2023. (ECF No. 31.) On September 7, 2023, Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement. (ECF No. 33.) In light of the motion, the Court entered the Parties' Stipulation and Order dated September

---

[2] Defendants vigorously dispute Plaintiffs' claims, maintaining that the water pumps are not defective, function properly, that no actionable misrepresentation or omissions or wrongdoing occurred, no warranties have been breached, and no applicable statutes or laws were violated.

8, 2023, which indefinitely extended VWGoA's time to respond to the First Amended Class Action Complaint. (ECF No. 35.)

### C.    Settlement Negotiations

Shortly after the initiating complaint was filed, the parties began exchanging informal information related to the issues in the case, including Plaintiffs' allegations and Defendant's anticipated defenses. The negotiations were substantial and at arms-length, including counsel for the Parties meeting and conferring multiple times over several months and, thereafter, engaging Bradley A. Winters from JAMS to mediate the case. Mr. Winters is an experienced and well-respected mediator who has successfully mediated numerous complex cases, including automotive defect class actions. Leading up to the mediation, the parties informally exchanged additional information related to their claims and defenses, and participated in numerous teleconferences. A full-day mediation was conducted on April 7, 2023. Following the substantial prior negotiations, during the mediation the parties agreed on the material terms of the settlement and thereafter engaged in additional negotiations regarding the details of the settlement, which eventually culminated in the Settlement Agreement which was executed on August 24, 2023.

As the Court found in its Preliminary Approval Order, the Settlement Agreement is the result of protracted and vigorous arms'-length negotiations between the Parties, all of which are represented by experienced class action counsel.

(ECF No. 38, ¶ 9.) As described above, the parties exchanged information relevant to the claims at issue, which, together with Plaintiffs' counsel's extensive investigation, provided the parties with sufficient information to assess the strengths and weaknesses of their respective claims and defenses and the litigation risks moving forward. *Id.*, ¶ 8. The result was a nationwide class action settlement that provides prompt relief and substantial benefits to the Settlement Class Members.

### D.    Terms of the Settlement Agreement

The Settlement provides substantial benefits to the following Settlement Class: "All persons and entities who purchased or leased a Settlement Class Vehicle, as defined in Section I.X. of this Agreement, in the United States of America and Puerto Rico." SA, § I.W.[3] "Settlement Class Vehicle" is defined as "certain specifically designated model year 2013-2018 Audi A6, A7 and A8 vehicles, model year 2013-2017 Audi Q5 and Audi S5 (Cabrio and Coupe) vehicles, model year 2013-2015 and 2017-2019 Audi Q7 vehicles, model year 2013-2016 Audi S4

---

[3] Excluded from the Settlement Class are: (a) all Judges who have presided over the Actions and their spouses; (b) all current employees, officers, directors, agents and representatives of Defendants, and their family members; (c) any affiliate, parent or subsidiary of Defendants and any entity in which Defendants have a controlling interest; (d) anyone acting as a used car dealer; (e) anyone who purchased a Settlement Class Vehicle for the purpose of commercial resale; (f) anyone who purchased a Settlement Class Vehicle with salvaged title and/or any insurance company that acquired a Settlement Class Vehicle as a result of a total loss; (g) any insurer of a Settlement Class Vehicle; (h) issuers of extended vehicle warranties and service contracts; (i) any Settlement Class Member who, prior to the date of this Agreement, settled with and released Defendants or any Released Parties from any Released Claims, and (j) any Settlement Class Member who files a timely and proper Request for Exclusion from the Settlement Class. (SA, Section I.W.)

vehicles, and model year 2014-2017 Audi SQ5 vehicles, that are equipped with the EA837 and EA837 evo engines and specifically designated by Vehicle Identification Number (VIN) in Exhibit 4 to this Settlement Agreement, which were imported and distributed by Defendant Volkswagen Group of America, Inc. for sale or lease in the United States and Puerto Rico." (*Id.*, § I.X.)[4]

## I.    **Warranty Extension for Current Owners and Lessees**

Effective on June 26, 2024, VWGoA extended the New Vehicle Limited Warranties ("NVLW") applicable to the Settlement Class Vehicles to cover seventy-five percent (75%) of the cost of repair or replacement of a failed Water Pump, by an authorized Audi dealer, during a period of up to 7 years or 75,000 miles (whichever occurs first) from the In-Service Date of the Settlement Class Vehicle, provided that the Settlement Class member submits, to the dealer, Proof of Adherence to the Vehicle's Maintenance Schedule, required by Section I.S. above (the "Warranty Extension"). *See* SA § II.A. The original NVLW warranty period for the Settlement Class Vehicles is 4 years or 50,000 miles (whichever occurs first), and thus the 7-year/75,000 mile extension is a substantial increase. The Warranty Extension includes the Water Pump and all parts and labor necessary to effectuate

---

[4] Because the VIN list is very long, and includes confidential personal information of Settlement Class Members, it is not being submitted to the Court.  If the Court wishes to review the VIN list the parties will supply it.

that repair. In the event Settlement Class Vehicle has "timed out" of the Warranty Extension as of the Notice date due to its age, then the Warranty Extension for that vehicle shall be for up to ninety (90) days from the Notice Date or seventy-five thousand (75,000) miles from the vehicle's In-Service Date, whichever occurs first.

The Warranty Extension (subject to the same basic maintenance requirement) will also include coverage for a percentage of the cost of repair or replacement (parts and labor), by an authorized Audi dealer, of a damaged engine of a Settlement Class Vehicle that is directly caused by the failure of the vehicle's Water Pump, during the aforesaid Warranty Extension period of seven (7) years or seventy-five thousand (75,000) miles (whichever occurs first) from the vehicle's In-Service Date, in accordance with the following percentage limits of coverage, set forth in the Table below, which are based upon the age and mileage of the vehicle at the time of said repair or replacement:

| Time from In-Service Date | Less than 50,000 miles | 50,001 to 55,000 miles | 55,001 to 65,000 miles | 65,001 to 75,000 mi |
|---|---|---|---|---|
| 4 years or less | 100% | 80% | 60% | 55% |
| 4-5 Years | 80% | 60% | 50% | 40% |
| 5-6 Years | 65% | 50% | 40% | 25% |
| 6-7 Years | 50% | 35% | 25% | 15% |

| "Timed- out" as of Notice Date | 35% | 25% | 15% | 10% |
| --- | --- | --- | --- | --- |

The Warranty Extension is subject to the same terms and conditions set forth in the Settlement Class Vehicle's New Vehicle Limited Warranty and Warranty Information Booklet, and is transferrable to subsequent owners of Settlement Class Vehicles to the extent that the time and mileage limitations of the Warranty Extension have not expired.[5]

## II. Reimbursement for Past Paid Out-of-Pocket Expense of a Primary Engine Water Pump Repair (Current and Former Owners and Lessees)

In addition to the robust Warranty Extension, for Settlement Class Members that paid for (and were not otherwise reimbursed) a repair or replacement of the Water Pump of a Settlement Class Vehicle prior to June 26, 2024, and within seven (7) years or seventy-five thousand (75,000) miles (whichever occurred first) from said vehicle's In-Service Date, the Settlement provides that he/she/it may submit a Claim to receive a seventy-five percent (75%) reimbursement of the paid invoice amount for said repair or replacement (parts and labor), limited to one (1) repair or replacement per Settlement Class Vehicle.  However, if said repair or replacement of the Water Pump was performed by a service center or facility that is not an

---

[5] Excluded from the Warranty Extension are any Water Pump failures or engine damage resulting from abuse, alteration, modification, collision or crash, vandalism and/or other impact, or lack of or improper maintenance.

authorized Audi dealer, then the paid invoice amount of the repair (parts and labor), from which the Settlement Class Member may receive a 75% reimbursement, shall be limited to a maximum of $1,200.00.[6]

### III.    Reimbursement for Past Paid Out-of-Pocket Expenses for Repair of Engine Damage Directly Caused by a Primary Engine Water Pump Failure (Current and Former Owners and Lessees)

In addition, if, prior to June 26, 2024, and within seven (7) years or seventy-five thousand (75,000) miles (whichever occurred first) from the Settlement Class Vehicle's In-Service Date, a Settlement Class Member paid (and was not otherwise reimbursed) for a repair of engine damage that was directly caused by a failure of a Settlement Class Vehicle's Water Pump, he/she/it may submit a Claim to receive a percentage of reimbursement of the paid invoice amount for the repair (parts and labor), limited to one (1) repair per Settlement Class Vehicle, in accordance with the following percentage limits of coverage, set forth in the Table below, which are based upon the age and mileage of the vehicle at the time of said repair or replacement:

---

[6] Similar to the warranty extension requirements, Settlement Class Members will not be eligible for reimbursements if the failure of the Water Pump was due to abuse, alteration, modification, collision or crash, vandalism and/or other impact, or lack of or improper maintenance. *See* SA, Section II.B.2.c.

| Time from In-Service Date | Less than 50,000 miles | 50,001 to 55,000 miles | 55,001 to 65,000 miles | 65,001 to 75,000 mi |
|---|---|---|---|---|
| 4 years or less | 100% | 80% | 60% | 55% |
| 4-5 Years | 80% | 60% | 50% | 40% |
| 5-6 Years | 65% | 50% | 40% | 25% |
| 6-7 Years | 50% | 35% | 25% | 15% |

However, if the Settlement Class Vehicle's engine was repaired or replaced by a service center or facility that is not an authorized Audi dealer, the maximum invoice amount, to which the applicable sliding scale percentage of coverage above will be applied, shall be $5,500.00.  Thus, for example, if the invoice amount for the engine repair or replacement exceeds $5,500, then the applicable sliding scale percentage will be applied to $5,500.

## IV.    The Claims Process

Claims for reimbursements under the Settlement must be submitted no later than September 24, 2024, contain a fully completed, signed, and dated Claim Form together with all required Proof of Repair Expense, Proof of Adherence to the Vehicle's Maintenance Schedule, and any other required documentation. Rust Consulting, Inc., ("Rust") an experienced class action claims administrator is administering the Settlement and will review all claims, and both Class Counsel and Defense Counsel have a right to monitor the claims process.

As a further benefit, Settlement Class Members that submit claims that are

deficient in some respect (i.e. incomplete or lacks certain proof) will receive a letter identifying the specific deficiencies and a 30 day period from the date of that letter/notice to cure the deficiencies. In addition, while Rust's claim decisions are final, Settlement Class Members have the right to seek an Attorney Review of any denial of their claims within 15 days from the date of the denial letter. If an Attorney Review is requested, Class Counsel and Defense Counsel will meet and confer and determine whether the denial was correct under the terms of the Settlement and to assess whether any disputed issues can be amicably resolved. For approved claims, Rust will mail a reimbursement check within 150 days of the receipt of the Claim, or within 150 days of the Effective Date, whichever is later.

### E.    Service Awards and Class Counsel Fees and Expenses

After the parties agreed on the material terms of the Settlement, the parties then began to negotiate, and ultimately resolved subject to the Court's approval, the amount of Class Counsel's fees and expenses, and the Plaintiffs' service awards. Specifically, VWGoA will not oppose a request for Class Counsel Fees and Expenses that does not exceed a total combined amount of $750,000, and will not oppose a service award that does not exceed $3,500 to each of the two Plaintiffs. Plaintiffs filed their Fee and Expense Application on July 19, 2024. Neither Class Counsel's requested attorneys' fees nor the service awards will reduce, modify, or have any effect on the benefits provided to the Settlement Class Members.

### F.    Notification to Settlement Class Members

As the Court held in its Preliminary Approval Order, the Notice Plan provides the best notice practicable to the Settlement Class Members.  (ECF No. 38, ¶ 10.) The Claim Administrator provided the required notice under the Class Action Fairness Act, 28 U.S.C. § 1715, and caused the Class Notice and a copy of the Claim Form to be mailed, by first class mail, to the current or last know addresses of all reasonably identifiable Settlement Class Members on June 26, 2024. SA § V.B.1; *see also* ECF No. 47-1. The Claim Administrator obtained the names and current or last known addresses of all current or former owners or lessees of the Settlement Class Vehicle through Polk/IHS Markit based upon the vehicle identification numbers ("VINs"), which VWGoA provided. SA § V.B.2.

Prior to mailing, the Claim Administrator conducted an address search through the United States Postal Service's National Change of Address database to update the address information for Settlement Class Vehicle owners and lessees. For any Class Notices returned as undeliverable, the Claim Administrator re-mailed all Class Notices with a forwarding address. For the remaining undeliverable notice packets where no forwarding address was provided, the Claim Administrator performed an advanced address search (e.g., a skip trace) and re-mailed any undeliverable to the extent any new and current addresses were located. SA § V.B.3.

In addition to the Class Notice, a settlement website was published

(https://www.primarywaterpumpsettlement.com), which includes relevant documents (e.g. pleadings, the Class Notice, the Claim Form, the motions for preliminary and final approval, Class Counsel's Fees and Expense Application, FAQs, and information to assist with submitting a Claim.) The website includes an easy to use portal for Settlement Class Members to insert their Vehicle Identification Number, which allows them to confirm that their vehicle is a Settlement Class Vehicle. The settlement website also has a page dedicated to the relevant deadlines for objecting to the Settlement and requesting exclusion, as well as the date, time and location of the Final Fairness Hearing, and the Class Notice provides information about the website and how to obtain addition information.

A Claim Form was also mailed with the Class Notice. While the Class Notice lists the requirements for a valid claim, including the various proof requirements, the Claim Form also provides that information. The Class Notice also identifies a toll-free telephone number for the Claim Administrator, and the URL for the Settlement Website. Class Counsel also set up a dedicated page on its law firm website that describes that a settlement was reached and links to the Settlement Website.

### G.    Objections and Requests for Exclusion from the Settlement

The deadline to object to the terms of the Settlement, Class Counsel's requested fees and expenses and class representative service awards, or to request exclusion from the settlement, was August 10, 2024. There have been only three

objections to the Settlement, and only 20 requests for exclusion (of which only 18 are valid). The objections are discussed further in Section III(B), *infra*.

### H.    The Release

In exchange for the foregoing, and subject to the Court's approval, Settlement Class Members that do not timely exclude themselves will be bound by a release to all claims arising out of or relating to the Primary Engine Water Pumps in the Settlement Class Vehicles ("the Released Claims"). SA § IX.D. The Released Claims include all claims that were or could have been asserted in the Action. The Released Claims include Defendants and their related entities as "Released Parties," which include typical categories of entities and persons, and are set forth in the "Released Parties" in the Settlement Agreement. SA § I.V. The Released Claims expressly exempt claims for personal injuries and property damage (other than damage to the Settlement Class Vehicle related to the Primary Engine Water Pump). Subject to the Court's final approval, the Action will also be dismissed with prejudice.

### I.    The Preliminary Approval Order

On March 18, 2024, the Court issued an order that granted preliminary approval to the parties' settlement and authorized notice to the class. The Court also set the Final Fairness Hearing for September 18, 2024 at 11:00 a.m. Settlement Class Members had until August 10, 2024 to object to or opt-out of the settlement, and

those who do not opt-out have until September 24, 2024 to submit claims.

## III.    ARGUMENT

### A.    The Settlement is Fair, Reasonable, and Adequate.

In order to grant final approval to the proposed class action Settlement, the Court must hold a hearing and find the settlement "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). While courts examine each settlement individually, they are guided by a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). By entering into a settlement, the parties can benefit substantially by avoiding "costs and risks of a lengthy and complex trial", including a class action trial. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

#### 1.    *Presumption of fairness.*

This Settlement meets the criteria for a presumption of fairness. The requirements to qualify for a presumption of fairness are as follows: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d. Cir. 2016) (citation and quotations omitted).

As the Court held, the Settlement is the product of arm's length negotiations undertaken over a substantial period of time and with the assistance of Bradley A.

Winters of JAMS through a full day of mediation. (ECF No. 38, ¶ 9.) "The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Shapiro v. All. MMA, Inc.*, No. 17-2583, 2018 WL 3158812, at *2 (D.N.J. June 28, 2018) (citation and internal marks omitted); *see also Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arm's length negotiations and highlighting the fact that the negotiations included "two full days of mediation").

As held in the Preliminary Approval Order, "the proceedings that occurred before the Parties entered into the Settlement Agreement afforded counsel the opportunity to adequately assess the claims and defenses in the Action, the positions, strengths, weaknesses, risks and benefits to each Party…" (ECF 38, ¶8). Class Counsel conducted their own extensive investigation in the defect, which included interviewing hundreds of members of the putative class, a review of putative class member documents, and consultation with experts. The parties also engaged in confirmatory discovery, which included both technical information on the part at issue in the litigation and claims rates, which enabled Plaintiffs to gain "a clear understanding of the strengths and weaknesses of their case," *Udeen v. Subaru of Am., Inc.*, No. 18-17334, 2019 WL 4894568, at *4 (D.N.J. Oct. 4, 2019), and confirm that the proposed Settlement is fair, reasonable, and adequate.

The requirement of experienced counsel has also been met here. Throughout the litigation of this Action, the parties have been represented by counsel highly experienced in class action litigation and settlement negotiations.

Finally, the notification of the Settlement Class has thus far resulted in a infinitesimally small number of objections and opt outs. The deadline to either opt-out or object was August 10, 2024. Of the approximately 396,000 Class Vehicles, Class Notices were mailed to 687,971 Settlement Class Members, and Plaintiffs have only received three objections and 20 opt outs, and 18 of the 20 opt outs are valid.[7] ECF No. 47-1, ¶ 7. (Declaration of Jason Stinehart).  Of the total notices sent, the objection percentage of 0.00044% and opt-out percentage of 0.0029% constitute only a miniscule fraction of the Settlement Class. This demonstrates overwhelming support for the Settlement from the Settlement Class Members.

### 2.    *The* **Girsh** *factors*

Having met each of the requirements for a presumption of fairness, this motion now turns to the *Girsh* multifactor test. The Third Circuit requires the consideration of the following factors when approving a class settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement;  (3) stage of the proceedings and the amount of discovery completed;  (4) risks of establishing liability; (5) risks of establishing damages;  (6) risks of maintaining the class

---

[7] As explained in Defendant's brief in support of its motion for final approval, the two invalid requests for exclusion are from individuals that are not Settlement Class Members, as they did not purchase or lease a Settlement Class Vehicle.

action through the trial;  (7) ability of the defendants to withstand a
greater judgment;  (8) the range of reasonableness of the settlement
fund in light of the best possible recovery; and  (9) the range of
reasonableness of the settlement fund to a possible recovery in light of
all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).[8]

The first factor, "the complexity, expense, and likely duration of the
litigation", supports approval. Without the Settlement, the parties would be engaged
in contested motion practice and adversarial discovery for years. Continued
litigation would be complex, time consuming and expensive, and with an uncertain
outcome. Conversely, the Settlement secures substantial benefits for the Settlement
Class without the delay, risk and uncertainty of continued litigation. *See Yaeger v.
Subaru of Am., Inc.*, No. 14-cv-4490, 2016 WL 4541861, at *9 (D.N.J. Aug. 31,
2016) ("The longer the litigation extended, the more the owners of affected class
vehicles would suffer. Where motor vehicles have a relatively short lifespan, there
is a premium upon promptly finding a remedy for alleged defects to restore full
enjoyment of the vehicle."); *Weiss v. Mercedes Benz of N. Am.*, 899 F. Supp. 1297,
1301 (D.N.J. 1995) (approving settlement that was the "result of an arm's length

---

[8] The factors recently added to Fed. R. Civ. P. 23(e)(2) substantially overlap with the *Girsh*
factors. The factors to consider are: whether the class was adequately represented, whether the
proposal was negotiated at arm's length, whether the class members are treated equitably, and
whether the relief provided for is adequate (based on the costs and delay of trial and appeal, the
effectiveness of the claims process, the terms of attorneys' fees, and that any payments in exchange
for the withdrawal of objections are disclosed). All of these factors are addressed by the *Girsh* and
*Prudential* factors herein. The agreement with Mr. Syphard (described below) is discussed in
Defendant's brief in support of the motion for final approval of the settlement.

negotiation between two very capable parties" and where "Mercedes was prepared to contest this class action vigorously.").

The second factor supports approval because the class reaction, as measured by the number of objections and opt-outs, is overwhelmingly positive. Of the approximately 687,000 Settlement Class Members, there are only three objections. As shown in Section III below, the objections lack merit. The objection and opt-out percentages of 0.00044% and 0.0029%, respectively, show overwhelming Class support for the Settlement. *See Oliver v. BMW of N. Am., LLC*, Civil Action No. 17-12979, 2021 WL 870662, at *5 (D.N.J. Mar. 8, 2021) (finding "the class reaction to the settlement appears to be extremely positive and favorable overall" where more than 99% of class did not object or opt out); *In re Nissan Radiator*, No. 10-cv-7493, 2013 WL 4080946, at *6 (S.D.N.Y. May 30, 2013) ("The reaction of most of the class to the settlement has been positive and in favor of settlement" where the objection percentage was approximately .005%); *Weiss*, 899 F. Supp. at 1301 (100 objections out of 30,000 class members weighed in favor of settlement); *Yaeger*, 2016 WL 4541861 at *9 (observing "the overall reaction of the class has been strongly positive" with 34 objectors and 2,328 opt-outs compared to 577,860 vehicles). The overall response of this class to the Settlement therefore indicates the fairness of the Settlement and provides further proof that it should be approved.

The third factor, the stage of the proceedings and the amount of discovery completed, also supports approval, as this Court held in granting preliminary approval (ECF No. 38, ¶ 8.). The parties have exchanged confirmatory discovery, including both technical information on the water pumps at issue in the litigation and claim rates. In addition, Class Counsel, who have vast experience in automotive defect cases, have conducted their own independent investigation into and analysis of the alleged defect, which includes interviewing hundreds of members of the putative class, a review of putative class member documents, and consultation with experts. The discovery completed has allowed counsel to understand the strength and weakness of their case, and allowed them to analyze the risk of future litigation in comparison to the relief offered by the Settlement. *See Yaeger*, 2016 WL 4541861, at *9-10 (finding amount of discovery conducted supported final approval where counsel had conducted its own investigation, researched and responded to numerous inquiries from class members, received and analyzed documents produced by defendants, and conducted confirmatory discovery). Class actions alleging automotive defects are complex and present unique issues, as the vehicles continue to age and put on miles. Therefore, early settlement before extensive discovery is in the best interests of the class, as it enables the maximum number of Settlement Class Members to receive the tangible benefits of the Settlement. *Yaeger v*, 2016 WL 4541861, at *9.

The fourth, fifth, and sixth factors all analyze the risk of continued litigation. If the parties had been unable to resolve this case through the Settlement, the litigation would likely have been protracted and costly. Class Counsel have litigated many automotive class actions that have taken several years to conclude, and some have lasted over a decade factoring in the appeal of class certification orders. Before approaching a trial in this case, the parties likely would have briefed motions to dismiss, class certification (along with a potential Rule 23(f) appeal), *Daubert* motions, and summary judgment – in addition to expending considerable resources on electronic discovery, depositions, and expert witnesses. It is unlikely that the case would have reached trial before 2026, with post-trial activity to follow, while settling now will provide immediate benefit to the Settlement Class Members. *See Haas v. Burlington Cty.*, No. 08-1102, 2019 WL 413530, at *6 (D.N.J. Jan. 31, 2019) (granting approval with estimate of the time to judgment, including trial, would take another three years); *Yaeger*, 2016 WL 4541861, at *9 (holding prospect of "protracted motion practice" involving the "nuances of various state laws" as well as "costly discovery" weighed in favor of settlement). Perhaps most importantly for these factors, the foregoing analysis presumes Plaintiffs' amended pleading would have survived Defendants' anticipated motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Moreover, Defendants vigorously dispute the claims and maintain there is no defect, that there was no breach of any warranty, that no statutes were violated, and that most Class Members have never experienced, and indeed may never experience, any alleged malfunction of their Primary Engine Water Pump. Defendants also intend to assert numerous defenses which could potentially prevent or substantially reduce many Settlement Class Members' recovery under their applicable States' laws, such as statutes of limitation, lack of standing, lack of privity, absence of a duty to disclose, absence of pre-sale knowledge of the alleged defect, economic loss rule prohibitions, and other common law and/or statutory defenses.

These individualized defenses pertaining to the various Settlement Class Members yield no guarantee of recovery and render the prospects of class certification risky. In addition, there are numerous other individualized factors that could adversely affect the ability to certify a class if this action is litigated, including: how each Settlement Class Vehicles was driven and maintained; what, if anything, Settlement Class Members may have seen, heard or relied upon prior to their purchase or lease; whether the vehicle was used when purchased/leased and the manner in which it was maintained by prior owners; whether and to what extent any Settlement Class Member experienced a water pump issue; the circumstances and root causes of any alleged water pump issue; and whether, when and under what circumstances a Settlement Class Member presented the alleged problem to an Audi

for diagnosis and repair. In addition, material differences in state laws among the 50 states could create substantial obstacles to nationwide class certification. In contrast, these individualized issues do not preclude class certification for settlement purposes, since the Court will not be faced with the significant manageability problems of a trial. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

The defendant's ability to withstand greater judgement is neutral. Such a factor is typically only relevant when "the defendant's professed inability to pay is used to justify the amount of the settlement." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 440. This not a factor here.

Finally, the remaining *Girsh* factors – the range of reasonableness of the settlement both independently and weighed against the risk of further litigation – support approval. The settlement must be judged "against the realistic, rather than theoretical potential for recovery after trial." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323 (3d Cir. 2011). The court must "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *California v. Teva Pharm. Indus.*, No. 19-3281, 2020 WL 3128027, at *6 (E.D. Pa. June 10, 2020); *see also In re Shop-Vac Mktg. & Sales Practices Litig.*, No. 2380, 2017 WL 5517515, at *2 (M.D. Pa. May 25, 2016) ("The proposed settlement amount does not have to be dollar-for-dollar the equivalent of the claim. . . and a satisfactory

settlement may only amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (internal citations and quotations omitted).

The settlement provides significant relief to the Settlement Class in the form of out-of-pocket reimbursements for expenses related to qualifying repairs and a warranty extension. Moreover, because the Settlement is claims-made and not a fund, the recovery of the Settlement Class will not be reduced *pro rata* based on the number of claimants. The Settlement's structure approximates the individual claims process that would have followed a successful class trial—but with simplified proof requirements and immediate relief. *See Butler v. Sears, Roebuck & Co*., 727 F.3d 796, 800 (7th Cir. 2013) (explaining that "a class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members . . . will often be the sensible way to proceed.") (citations omitted).

### 3.    *The* **Prudential** *factors*

The Third Circuit also permits courts to consider additional factors when evaluating whether to approve a class action settlement. In *In re Prudential Ins. Co. Am. Sales Practice Litig*, the Third Circuit identified additional factors that the Court may consider the following factors in evaluating a settlement agreement:

> (1) "the maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery

on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages"; (2) the "existence and probable outcome of claims by other classes and subclasses"; (3) "the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants"; (4) "whether class or subclass members are accorded the right to opt out of the settlement"; (5) "whether any provisions for attorneys' fees are reasonable"; and (6) "whether the procedure for processing individual claims under the settlement is fair and reasonable."

148 F.3d 283, 323 (3d Cir. 1998).

"Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential. They are permissive and non-exhaustive . . . ." *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 333 F.R.D. 364, 384 (E.D. Pa. 2019).

The first *Prudential* factor is met here because the information disclosed by the parties through confirmatory discovery, the independent investigation performed by Class Counsel, and research of key legal and factual issues by counsel have enabled the parties to gain a strong grasp of the case and its probable outcome. *Id.* ("Here, Class Counsel were able to make an informed decision about the probable outcome of a trial."). The parties were therefore able to make an informed decision prior to agreeing to the Settlement.

"Factors two and three look at the outcomes of claims by other classes and other claimants." *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 WL 1922902, *23

25

(E.D. Pa. Apr. 21, 2020). Class Counsel are unaware of other related class actions. Class Counsel contend that the Settlement is a desirable outcome for the Settlement Class, and the reaction from the Settlement Class has been resoundingly positive.

Since the Settlement permits individuals to opt out, the fourth *Prudential* factor is satisfied.

As demonstrated in the Plaintiffs' recently filed motion for attorney's fees (ECF No. 39), the attorney's fees sought in this action are reasonable. As a result, the fifth *Prudential* factor is met as well.

The procedure for processing claims under the Settlement is also fair and reasonable. Here, the warranty extension is automatic. With respect to the claims for expense reimbursements, the claimant need only submit completed Claim Forms with the required documentation. Settlement Class Members are also provided with the contact information for Class Counsel if they have any questions or issues.

### B.    The Objections Should be Overruled.

Of the 687,971 notices sent, only three (3) objections have been received to date, representing 0.00044% of the Settlement Class. As explained below, the objections do not provide any basis to deny final approval of the settlement. Further, the scant number of valid opt outs (18 in total) also do not provide any basis to deny final approval of the settlement.

26

### 1. The Objection of Bruce Digby

The objection submitted by Bruce Digby (ECF No. 40) is procedurally deficient. As stated in the Settlement Agreement, and the Court's preliminary approval order, an objecting Settlement Class Member must provide the following:

> (i) the objector's full name, address, and telephone number; (ii) the model, model year and Vehicle Identification Number of the Settlement Class Vehicle, along with proof that the objector has owned or leased the Settlement Class Vehicle (i.e., a true copy of a vehicle title, registration, or license receipt); (iii) a written statement of all grounds for the objection accompanied by any legal support for such objection; (iv) copies of any papers, briefs, or other documents upon which the objection is based and are pertinent to the objection; (v) the name, address and telephone number of any counsel representing said objector; (vi) a statement of whether the objecting Settlement Class Member intends to appear at the Final Fairness Hearing, either with or without counsel, and the identity(ies) of any counsel who will appear on behalf of the Settlement Class Member objection at the Final Approval Hearing; and (vii) a list of all other objections submitted by the objector, or the objector's counsel, to any class action settlements submitted in any court in the United States in the previous five (5) years, including the full case name, the jurisdiction in which it was filed and the docket number. If the Settlement Class Member or his/her/their/its counsel has not objected to any other class action settlement in the United States in the previous five (5) years, he/she/they/it shall affirmatively so state in the objection.

SA § VI(A). Mr. Digby fails to provide the following: proof that he owned or leased the Settlement Class Vehicle, a statement of whether he intends to appear at the Final Fairness Hearing, a list of all other objections submitted in the past 5 years or a statement that he has not objected to any settlements.

Mr. Digby takes issue with only one aspect of the settlement, specifically what Mr. Digby states to be the sliding scale of reimbursement for "Unreimbursed Out-of-Pocket expenses for Repair of Primary Engine Water Pump." *Id.* at 2. Mr. Digby is mistaken that "reimbursement can decline to 10%" for Primary Engine Water Pump Repairs. As explained on page 2 of the Notice, valid reimbursement Claims for the Primary Engine Water Pump will be paid at 75% of the total unreimbursed payment amount.[9] Similarly, coverage pursuant to the Warranty Extension will also be 75% of the total repair cost. The only portion of the Settlement to which the sliding scale applies is for engine damage claims, which are exceptionally rare. Mr. Digby suggests that the mileage categories should "be extended, using the declining percentage method until the reimbursement is extinguished," and he proposes extending the 75,000 mile limit essentially indefinitely.

The substance of Mr. Digby's objection should be overruled, as the question before the Court is not whether a hypothetical settlement is more beneficial, but whether the settlement before it is reasonable. *See Yaeger*, 2016 WL 4541861, at *17 ("Like any compromise, a case could be made for the longer warranty period advocated by these objectors, or for the status quo that Subaru might achieve if the settlement were rejected and it ultimately prevails on its legal and factual arguments.

---

[9] For repairs performed at non-authorized dealerships, the reimbursement is capped at $1,200 (i.e. $900 when reduced by 75%). Mr. Digby appears to have had his repair conducted by an Audi dealership and, if so, this provision would not be applicable to his claim.

. . . Of course, for those in aggravated situations there was the opportunity to opt out of this class and to pursue one's own remedies. That the proposed settlement does not provide a second 100,000 mile warranty upon the remedial parts is not reason for this Court to reject it."); *Skeen v. BMW of N. Am., LLC*, 2016 WL 4033969, at *9 (D.N.J. July 26, 2016) ("Plaintiffs do not deny that the warranty on Ms. Williams' vehicle . . . has already expired even under the extended terms of the settlement. . . . The Court agrees with Plaintiffs, however, that the Court's job is 'not to determine whether the settlement is the fairest possible resolution.' . . . With regard to the amount of relief offered under the settlement and the Class members receiving that relief, 'lines must be drawn somewhere.' . . . Ms. Williams does not convince the Court that the seven year warranty provided by the settlement, though perhaps not the fairest possible resolution, is unreasonable. The limited warranty extension reflects the reality that cars decline in value over time. . . . A warranty extension need not be indefinite to be reasonable.").[10]

### 2. *The Objection of William Radlein*

The objection submitted by William Radlein (ECF No. 44) is also procedurally deficient. Similar to Mr. Digby, he fails to provide the following: proof

---

[10] *See also Teva Pharm.*, 2020 WL 3128026, at *6 ("[S]ettlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding too large a settlement based on the court's view of the merits of the litigation.") (citation omitted).

that he owned or leased the Settlement Class Vehicle, a statement of whether he intends to appear at the Final Fairness Hearing, a list of all other objections submitted in the past 5 years or a statement that he has not objected to any settlements. Mr. Radlein seeks to have "the settlement be amended to '7 years and 75K miles' from the current '7 years or 75k miles, which ever comes first." *Id.* In other words, Mr. Radlein seeks to have the seven years <u>or</u> 75,000 mile period amended to seven years <u>and</u> 75,000 miles. Similar to Mr. Digby's objection, Mr. Radlein seeks to have the settlement offer more relief. Such an objection, however, is not valid and thus it should be overruled. *See* Section III(B)(1), *supra*.

### 3. *The Objection of Daniel Syphard*

The objection submitted by Daniel Syphard (ECF No. 48, "Obj.") is also procedurally deficient.[11] Mr. Syphard failed to include a statement of whether he intends to appear at the Final Fairness Hearing and a list of all other objections submitted in the past 5 years, or a statement that he has not so objected.

Turning to the substance, Mr. Syphard makes eight separate objections. Before addressing each objection in turn, it is important to note that Mr. Syphard has not experienced any issues with the Primary Engine Water Pump in his Settlement

---

[11] It is Class Counsel's understanding that Mr. Syphard and Defendant agreed to an individual settlement, and he has withdrawn his objection to the motion for final approval of the settlement, but that he intends to maintain his objection to the motion for attorneys' fees, expenses, and service awards.

Class Vehicle. As pages 5-6 demonstrate, Mr. Syphard had issues with the fuel pump and the secondary airport, neither of which are at issue, or released by the Settlement. In addition, Class Counsel spoke with Mr. Syphard for approximately 40 minutes on August 19, 2024. During that call, Mr. Syphard represented that he has a law degree but is not an active attorney, which forced him to file his objection *pro se*, which appears to be in contradiction with the Supreme Court of Ohio Attorney Directory.[12] In fact, My. Syphard's own LinkedIn page lists him as "Assistant General Counsel" at Cenovus Energy.[13]

*First*, Mr. Syphard argues that no Settlement Class Member will receive a 100% payout for engine damage claims under the settlement. Mr. Syphard confuses the sliding scale for *engine damage* claims caused by a Primary Water Pump Failure with the flat reimbursement rate for any Primary Water Pump failure, which is not subject to a sliding scale at all. In any event, the sliding scale for *engine damage* claims reflects this is a settlement and the reality that the older the engine, the longer

---

[12] https://www.supremecourt.ohio.gov/AttorneySearch/#/80058/attyinfo (last visited Sept. 9, 2024).

[13] https://www.linkedin.com/in/daniel-syphard-67711a8 (last visited Sept. 9, 2024). Mr. Syphard describes his role as follows: Chief legal advisor for all U.S. legal matters for Cenovus Energy's U.S. Operations (1,600 employees at the U.S. headquarters and 5 facilities), ensuring compliance with regulatory requirements, and providing strategic legal and business guidance to the executive team. Led U.S. legal through a period of significant growth in the business including a large merger (valued at $25B) and two refinery acquisitions. Directed legal strategy to reduce risk and capture margin in a challenging regulatory environment. Recognized by my colleagues as a trusted and skilled advisor providing innovative legal and business solutions based upon sound and resourceful strategies."  A copy of his LinkedIn page is attached hereto as **Exhibit 1**.

it operated without any issues.

**Second**, he argues that the sliding scale is "unjust" and "drastically reduces claim payouts and will chill claim submissions." Obj., 2. Again, Mr. Syphard is conflating the sliding scale for engine damage claims with claims for reimbursement for the failure of a Primary Engine Water Pump. Claims for engine damage caused by the water pump are extremely rare, as they require Settlement Class Members to operate their vehicles for a substantial period of time while ignoring warnings from the vehicle that the coolant level is low (which is akin to neglecting the vehicle). Even setting that aside, the Settlement still provides relief to those individuals instead of excluding them. Further, the claims for reimbursement for the failure of the Primary Engine Water Pump are not reduced by the sliding scale at all, belying the claim that "it is unrealistic to believe there are a significant amount of class members that can receive the full benefit of this settlement." Obj., at 3. The parties estimate less than 5% of the claims seek engine damage reimbursement, which refute Mr. Syphard's claim that a significant amount of engine damage claims exist.

**Third**, Mr. Syphard claims that the settlement "times out" claims prior to the final approval of the settlement. Obj., 3. Again, this is wrong. The Settlement actually states that for any Settlement Class Vehicles that are outside of the 7-year time limit of the warranty extension as of the Notice Date, the Settlement's time requirement is extended for 90 days from the Notice Date (subject to the mileage

limit), and thus instead of "drastically reduc[ing]" claims, it actually increases them. Even if it didn't, a limited warranty extension is reasonable. *Alin v. Honda Motor Co.*, Ltd., 2012 WL 8751045, at *12 (D.N.J. Apr. 13, 2012) (finding that class settlement with auto manufacturer was reasonable where the "largest category of objections comes from customers whose cars were too old, or had too many miles to be eligible for recovery according to the lines drawn in the agreement").

**Fourth**, Mr. Syphard claims that no class member can demonstrate they "strictly adhere[d] to Audi's expensive and arbitrary maintenance schedule." Setting aside that Mr. Syphard should understand that he agreed to those maintenance schedules when purchasing his vehicle, and that his speculation as to recordkeeping by other individuals is unfounded, he ignores that the Claim Form states if someone is unable to obtain records, they can submit a declaration (which is on the Settlement Website) attesting to their good faith effort to obtain the records, which satisfies the maintenance requirement. The Settlement also allows a variance of 10% of each of the maintenance requirements, which is not "strict adhere[hence]."[14]

**Fifth**, Mr. Syphard takes issue with the requirement to use an authorized Audi dealership to receive warranty repairs. Again, this requirement is clearly laid out in the vehicle warranty. Class Counsel have litigated cases against nearly every

---

[14] Mr. Syphard erroneously asserts that Settlement Class Members are required to submit records from prior owners or lessees. Obj., at 4-5. The Claim Form, however, states that the records are only required "during the period of time that you owned and/or leased the vehicle."

automobile manufacturer, and has never seen a warranty that does not require the owner bring their vehicle to the manufacturer's authorized dealership for warranty repairs. In addition, Audi dealers will receive warranty reimbursement for performing the necessary repairs under the settlement, which will undoubtedly *incentivize* them to perform the repairs, not deny them.

He also recounts his negative experiences with a fuel pump recall and an airport bulletin. Obj., at 5-6. Class Counsel does not dispute that Mr. Syphard had a negative experience with those issues, but neither of those cases were class actions with class counsel who could independently oversee Audi's conduct. Unlike those recalls, the Warranty Extension here is enforceable by Class Counsel and any issues will either be resolved by the Parties or, if necessary, by the Court.

***Sixth***, Mr. Syphard asks the Court to deny final approval of the Settlement because there is no information provided on the "estimated payout to Class Members." Obj., at 7. As the Settlement Website makes clear, the deadline to submit claims is September 24, 2024. While that period has not yet elapsed, over 6,100 claims have been submitted, which will be reviewed after the Effective Date occurs. Mr. Syphard's objections essentially ask for a different settlement with a lifetime unlimited warranty extension with no maintenance requirements, but the Court is not comparing the reasonableness of *this* Settlement against a hypothetical settlement with different terms. *In re Shop-Vac*, 2017 WL 5517515, at *2 ("a

satisfactory settlement may only amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

**Seventh**, Mr. Syphard challenges Class Counsel's attorneys' fee request and cursorily discusses some of the *Gunter* factors. Mr. Syphard ignores that Courts encourage the negotiation of attorneys' fees between the parties, which the parties did here. *See*, *e.g.*, *Evans v. Jeff D.*, 475 U.S. 717, 734-38 n.30 (1986); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (negotiated fees are the "ideal" toward which parties should strive). Moreover, the requested fee and expense award falls on the low end of similar automotive class action settlements approved in the Third Circuit, and the fee and expense award will not reduce or alter the benefits the Settlement Class will receive. *See Skeen*, 2016 WL 4033969, at *2 (approving $2.1 million in attorneys' fees); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 301 (E.D. Pa. 2003) (approving $4.8 million in attorneys' fees); *Yaeger*, 2016 WL 4547126, at *2; *see also* ECF No. 42-1, at 31 (collecting cases on fee awards in similar cases).

Regarding the first *Gunter* factor, Mr. Syphard claims that Class Counsel may receive a "much larger award than the class members" and that the "settlement process will chill claims." This is not true, as over 6,100 claims have already been submitted, and the deadline to submit claims is September 24, 2024.

Regarding the second *Gunter* factor, Mr. Syphard claims that his objection warrants the denial or reduction in Class Counsel's fee request, and that Class

Counsel failed to provide a copy of the fee motion to the class. As stated in the Notice, Class Counsel's motion for fees, expenses, and service awards was posted to the Settlement Website under "Important Documents" on July 19, 2024. Further, one objection out of 687,000, which is principally founded on a misunderstanding of the settlement terms, does not justify Mr. Syphard's requests.

Regarding the third *Gunter* factor, Mr. Syphard argues that the Settlement is "harmful and unfair to class members, and leans heavy to protecting Audi of America and generating fees for Plaintiffs' counsel." These arguments, which are apparently not shared by any of the other 687,971 Settlement Class Members, have no basis in fact and are addressed above.

Regarding the fourth *Gunter* factor, Mr. Syphard argues that Class Counsel has not explained why this case required "additional skills or complexity." Obj., at 9. As explained in the fee motion, the Settlement itself is demonstrative of the skill and efficiency of Class Counsel. They negotiated a settlement that provides substantial relief, which is evidenced by over 6,100 Settlement Class Members submitting Claims with several weeks left before the deadline.

Regarding the fifth *Gunter* factor, Mr. Syphard speculates that "Plaintiffs' counsel is in the business of bringing class action case son [sic] contingency basis and their history of awards most likely prove that on average they are awarded properly for their work under Lodestar." Mr. Syphard's musings about other cases

have no bearing on *this case*, and he ignores that "the risk of non-payment as a major factor in considering an award of attorney fees." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 122 (D.N.J. 2012).

Regarding the sixth *Gunter* factor, Mr. Syphard states "Plaintiffs' counsel did not provide any additional information where it is due more than their hourly fees." Obj., at 10. The Declaration of Matthew D. Schelkopf sets forth the attorneys that worked on the case, their role at the firm, their hourly rate, the number of hours they worked on the case, and the total lodestar. ECF No. 42-2, at 6-7. Mr. Syphard appears to have not read the Declaration, which also states that "the lodestar figures reported herein will meaningfully increase by the time the settlement is completely and finally administered." *Id.* at 7. Class Counsel are still devoting substantial time to the administration of automotive class action settlements that received final approval several years ago, as they also include warranty extensions and claim denial appeals.

Finally, regarding the seventh *Gunter* factor, Mr. Syphard acknowledges that Class Counsel "cites to numerous cases but it is hard to compare those cases to this case as it does not show the awards class members received and the other Gunter factors compared to this case." Obj., at 10. Setting aside that it appears Mr. Syphard is in fact an active attorney who undoubtedly understands how to find a case, and further understands that every case cited in a brief cannot be explained in detail across numerous pages, the cases cited are automotive defect cases that feature relief

similar to this case: a warranty extension and reimbursement for past out of pocket expenses. Those cases also awarded substantially higher fees and expense requests.

In sum, the Court should overrule Mr. Syphard's objection for a multitude of reasons. It is procedurally deficient, and Mr. Syphard's claims to Class Counsel about his status as an attorney is a cause for suspicion. He appears to dislike class actions (his own company has faced one in the past involving an incident at an oil refinery that exploded[15]), and he has not even experienced a water pump failure, despite his Settlement Class Vehicle having over 140,000 miles on it. Mr. Syphard either did not read or understand the Settlement Agreement and/or the Notice, as his objection evidences a fundamental misunderstanding of the Settlement.

### C. The Notice Satisfied Due Process and Rule 23.

#### 1. *Rule 23*

Fed R. Civ. P. 23(c)(2)(B) states that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Here, the Claim Administrator worked with a reputable vendor to identify the addresses of the owners and lessees of the Class Vehicles. Direct mail notifications were sent to these

---

[15] https://www.startribune.com/superior-refinery-reaches-1m-settlement-will-pay-residents-who-evacuated/600077359 (last visited Sept. 4, 2024); *see also* Mr. Syphard's LinkedIn page, stating he is "Responsible for effectively managing a litigation portfolio with **settlements achieved at a fraction of the claim value; which included settling a large class action claim for under $2M**." (emphasis added).

persons, and a dedicated website was set up. The Notice Plan was effectuated properly by Rust. *See* Declaration of Jason Stinehart, ECF No. 47-1.

In the Order Granting Preliminary Approval, this Court found that the above-described methods constituted the best practicable notice under the circumstances. (ECF No. 38, ¶ 10.) Likewise, in *Henderson v. Volvo Cars of N. Am.*, *LLC,* Judge Cecchi found that a substantially similar notice plan – which included direct mail notification to identifiable class members, a dedicated settlement website, and toll-free telephone number – satisfied Federal Rule of Civil Procedure 23(c)(2)(B) and 23(e). *Henderson,* 2013 WL 1192479, at *13. The content and substance of the notice to the Settlement met all necessary legal requirements and provided a comprehensive explanation of the settlement in simple, non-legalistic terms. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice provided met both the requirements set forth in this Court's preliminary approval order and Rule 23.

### 2.    *Due Process*

"In addition to the requirements of Rule 23, due process further requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 435 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). The above-described notice system and accompanying notice

forms ensured that interested parties were made aware of the action and presented them with an opportunity to present their objections. Accordingly, the form and manner of the notice satisfies all applicable requirements.

### D. The Court Should Reaffirm Certification of the Settlement Class.

In its preliminary approval order, the Court conditionally certified the proposed Class for settlement purposes, concluding that certification of the Settlement Class satisfied the requirements of Rules 23(a) and 23(b)(3). (ECF No. 38, ¶ 7.) Nothing has changed since the Preliminary Approval Order, and no objections have been received challenging the propriety of the Court's certification of the Settlement Class. Accordingly, the Court should reaffirm those findings.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court the Court: (1) enter a Final Approval Order and Judgment granting final approval of the proposed Settlement; (2) grant final appointment of Plaintiffs as Settlement Class Representatives and their counsel, Sauder Schelkopf LLC, as Settlement Class Counsel; (3) grant final appointment of Rust Consulting as Claims Administrator; (4) direct the implementation of the Settlement in accordance with the terms and conditions of the Settlement Agreement; (5) certify the class for settlement purposes only; and (5) enter a final judgment dismissing this case with prejudice upon the Effective Date.

Dated: September 9, 2024          Respectfully Submitted,

By:    /s/ *Matthew D. Schelkopf*
        Matthew D. Schelkopf
        Joseph G. Sauder
        Joseph B. Kenney
        **SAUDER SCHELKOPF LLC**
        1109 Lancaster Avenue
        Berwyn, Pennsylvania 19312
        Telephone: (610) 200-0581
        mds@sstriallawyers.com
        jgs@sstriallawyers.com
        jbk@sstriallawyers.com

        ***Class Counsel***

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that a true and correct copy of the foregoing **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT** was electronically filed on September 9, 2024 using the Court's NextGen system, thereby electronically serving it on all counsel of record.

*/s/ Matthew D. Schelkopf*
Matthew D. Schelkopf